ORCUTT *v*. WHITE.

1. WORK AND LABOR—CONTRACTS—COMMON COUNTS — RIGHTS OF PARTIES WHERE CONTRACT VOID.

In an action on a contract and also on the common counts for services performed, where the contract was void and had not been fully performed, the rights and liabilities of the parties must be determined as though no contract had been made.

2. SAME—IMPLIED CONTRACT—IMPLIED PROMISE TO PAY.

Plaintiffs were not barred from recovery for their services under the common counts because the void contract provided for payment of the consideration partly in money and partly in property, since the implied promise is to pay, not what the void contract specified the compensation should be, but what the services were reasonably worth.

3. CONTRACTS—EXPRESS CONTRACT—IMPLIED CONTRACT.

Where there is a valid express contract none may be implied.

4. WORK AND LABOR—BROKER'S CONTRACT—RIGHT TO RECOVER FOR VALUE OF SERVICES ON PARTLY PERFORMED CONTRACT.

Defendants' claim that the agreement was a broker's contract and that plaintiffs' right to recover depended upon success is without merit, in view of the fact that plaintiffs were permitted to recover only on the *quantum meruit* for services rendered which defendants accepted, and plaintiffs' failure to perform was due to defendants' fault.

5. SAME—EVIDENCE—JOINT UNDERTAKING—JOINT ACTION.

Evidence *held*, to show that plaintiffs were jointly engaged to render certain services to defendants, entitling them to recover jointly.

6. SAME—EVIDENCE—SUFFICIENCY.

Evidence *held*, to justify submission of the case to the jury on the common counts.

7. SAME—EVIDENCE—ADMISSIBILITY OF VOID CONTRACT.

The void contract was properly admitted in evidence as

tending to show a request to plaintiffs jointly, that the services were not rendered gratuitously, and as bearing upon the value of the services.

8. SAME—LIABILITY OF EMPLOYER TO PAY FOR VALUE OF SERVICES PERFORMED.

In an action for the value of services in aiding defendants to float bonds of defendant railroad company and to find a purchaser therefor, the trial court properly instructed the jury that defendants had the right to go outside plaintiffs and procure the money for the bonds if they chose, but if before that time plaintiffs had procured a purchaser ready, able, and willing to buy, to defendant's knowledge, defendants would have to pay plaintiffs what their services were worth the same as if they had accepted them.

9. SAME—DAMAGES—EXCESSIVE VERDICT.

In view of the nature of the services, a judgment in favor of plaintiffs for $63,250, *held*, not excessive.

10. SAME—CONDITIONAL AFFIRMANCE.

Where plaintiffs concede that the judgment contains an improper allowance of $8,500 for interest, it will be affirmed on condition that they file a remittitur for said amount within 15 days.

Error to Alpena; Emerick (Frank), J.    Submitted May 2, 1922.    (Docket No. 53.)    Decided December 5, 1922.    Rehearing pending.

Assumpsit by Frederick H. Orcutt and others against William H. White and another for services rendered. Judgment for plaintiffs.    Defendants bring error. Affirmed, conditionally.

*George E. Nichols* and *J. M. Harris* (*Willard F. Keeney*, of counsel), for appellants.

*I. S. Canfield* and *J. O. Murfin,* for appellees.

McDONALD, J.    The plaintiffs are all residents of the city of Alpena, Michigan.    Orcutt is a banker. Canfield is an attorney, and Hoey a manufacturer of

lumber. Defendant William H. White resides in Boyne City, is president of the defendant railroad company, the W. H. White Company, White Brothers Lumber Company, and the Tillamook Fir Company. The Boyne City, Gaylord & Alpena Railroad Company operates a railroad between Boyne City and Alpena. The defendant White owns 57 per cent. of its stock. In November, 1913, the Michigan Trust Company of Grand Rapids was appointed receiver of the railroad company and the W. H. White Company. The indebtedness of the company at this time was $750,000; it was indebted to Mr. White for $300,000 and to certain people in Alpena, who held its notes for $195,000, and are referred to in the record as the Alpena note holders. It was also indebted in the sum of $59,000 to White Brothers Lumber Company, had outstanding accounts payable amounting to $77,000, and an original bond issue of $119,000. The defendant White was anxious to liquidate these debts and get the railroad company out of the hands of the receiver. For this purpose, it is claimed, he employed the plaintiffs to assist him. They met in Mr. Canfield's office and after a general discussion of the matter entered into the following preliminary agreement:

"Memorandum of agreement entered into August 14, 1915, between Boyne City, Gaylord & Alpena Railroad Company and W. H. White as first parties, and Fred H. Orcutt, W. T. Hoey and I. S. Canfield, of the second part.

"*Witnesseth:* That the said parties of the first part hereby agree to enter into a contract with second parties, and their associates, providing for the issue and sale of a bond issue of the railroad in the sum of $750,000, the details of which are to be expressed in said written contract; said first parties to agree therein that for the services of second parties they will pay $50,000 cash and $50,000 par value of the capital stock of the railroad, to be issued to such persons as they may direct, the railroad to get $700,000 net.

"Certain preliminary investigations that have been this day discussed are to be made in advance of the execution of said agreement.    The agreement to be drawn up and executed on or before the 25th day of August, 1915, and to contain the details of a working agreement along the lines of the above."

The agreement, which was to be entered into on the 25th day of August, was never executed, and so far as the record shows was not thereafter mentioned between the parties, but it does appear that for nearly two years, immediately following the execution of the preliminary agreement, the plaintiffs worked with Mr. White in his endeavors to refinance the road and take it out of the hands of the receiver.

It appears that there was a gap of about 11 miles in the railroad near Alpena, which had not been completed.    It was Mr. White's purpose to put over a bond issue that would retire the outstanding obligations of the railroad company, complete it to Alpena and provide new equipment for its operation.    The plaintiffs claim that to assist in bringing about this result, they rendered valuable services to the defendants; that they were handicapped in their efforts by reason of the fact that the receiver was opposed to bonding the road and rejected plan after plan as they were proposed, but that they continued to assist and co-operate with Mr. White until early in 1917, when they ceased their efforts at his request.

The defendants claim that if the plaintiffs rendered any service for them it was with the understanding that they were to receive no compensation unless they succeeded in disposing of sufficient bonds to refinance the company and take it out of the hands of the receiver; that the contract declared upon was void for uncertainty, and that the plaintiffs voluntarily abandoned the enterprise in September, 1916, and that Mr. White was compelled to solicit the assistance of

other parties, who succeeded in bringing the matter to a successful issue. For this reason a request for payment for their services was refused, and this suit was begun. The plaintiffs had judgment for $63,250. Defendants appeal.

The declaration contains five counts, four of them, the first, second, third, and fifth and the accompanying bill of particulars claim a recovery under a contract which the trial court held was void, and are therefore only indirectly connected with the questions herein involved. The fourth was on the common counts in assumpsit, and under this count the circuit judge submitted the case to the jury.

Counsel for the defendants insist that the plaintiffs cannot recover under the common counts for the following reasons:

"*First.* The consideration provided for in the contract and upon which the minds of the parties met was part money and part property.

"*Second.* That an implied contract can never be predicated upon an express contract.

"*Third.* That this is a broker's contract pure and simple, and unless fulfilled no compensation can be recovered.

"*Fourth.* That there is no implied joint undertaking on the part of the plaintiffs, and there can be no implied joint obligation upon the part of the defendants."

If the plaintiffs were suing for the breach of a valid existing contract, there could be no disputing the correctness of the defendants' position in the first two reasons assigned. But in the instant case the contract was void and has not been fully performed, and so the rights and liabilities of the parties must be determined as though no contract had been made. The basis upon which the court permitted a recovery was not for a breach of a void contract, but on another contract implied from the delivery and acceptance of substantial benefits. It is immaterial, therefore, that

the express contract provided for payment of the consideration partly in money and partly in property. The implied promise is to pay not what the void contract specified the compensation should be, but what the services were reasonably worth. It is true that where the consideration is fixed in a valid contract no other or different consideration can be implied, and, when the consideration named is other than money, no recovery can be had under the common counts. But where the express promise to pay a certain consideration for services is void, the law will not leave the party who performs services under it without remedy, but will imply a new promise to pay what the services are reasonably worth. That is this case. When these services were rendered there was no valid existing contract fixing their value, so the law implies a promise to pay what they are reasonably worth. If there had been a valid contract none could have been implied.

Counsel further urge that this was a broker's contract, and as it was not fully performed by the plaintiffs no recovery can be had under it; that their compensation depended upon success. Whether it was a broker's contract is not important in view of the fact that plaintiffs were permitted to recover only on the *quantum meruit.* It was void, and as it was not fully performed could not form the basis of recovery. But the enterprise was successful. Mr. White succeeded in accomplishing what he set out to accomplish with the assistance of the plaintiffs. It is true that they were not there at the finish, but apparently that was the fault of Mr. White and not of the plaintiffs. He laid them off, told them to "wait," and while they were waiting, closed the deal through other parties. Counsel say he did this because the plaintiffs had abandoned the work in September, 1916. The evidence seems quite to the contrary. If, therefore, they

did not abandon the work but were prevented from completing it because of the acts of the defendants, what matters it that their compensation depended upon success?

Defendants' fourth proposition is that "there is no implied joint undertaking on the part of the plaintiffs, and there can be no implied joint obligation upon the part of the defendants." The oral evidence as well as the written agreement, which may be considered for that purpose, shows that there was a joint undertaking on the part of the plaintiffs, that they were to work together and co-operate with Mr. White. Mr. Canfield testifies:

"The first conversation was to enlist, as I understood it, myself to assist him. After I had asked him some questions and some conversation at great length upon it, I said it was a large matter and if Mr. Orcutt and Mr. Hoey would assist me that I would undertake it if he wanted me to, and he said he did."

Mr. Orcutt testifies:

"He (Mr. White) wanted us to co-operate with him in putting over a bond issue."

The letters from Mr. White to Mr. Canfield clearly show that he understood that Orcutt and Hoey were co-operating with him in the work. They were jointly engaged in the work at Mr. White's request. They sued jointly. They can recover jointly and then, as the trial court remarked, "If they get any compensation they can do what they have a mind to among themselves." We think the circuit judge correctly held that the plaintiffs were entitled to have their case submitted to the jury under the fourth count in the declaration. There was much correspondence between Mr. White and Mr. Canfield from which it clearly appears that the services were requested and were of substantial benefit to defendants.

Mr. White testifies:

"Mr. Canfield had done valuable service to us and this railroad in several ways, and I am willing to pay him for the services performed—that he has performed —but he is the only man that had done actual work and worked to help in the delivery of these notes for the bonds, and worked in a general way, and Mr. Canfield did a lot of good work in the beginning and worked until the bonds were delivered and we had the money."

In view of this testimony from the defendant, who had actual charge of the negotiations, what was there for the jury except a determination of the damages? This was the opinion of the trial court and we think he was right.

Following this conclusion, the only assignments remaining for consideration are those relating to the admissibility of evidence, instructions to the jury and to the amount of the verdict.  Counsel complain of the admission in evidence of the void contract and the use made of it throughout the trial.

In his reasons for denying defendants' motion for a new trial, the circuit judge said that the contract might properly be considered in determining these questions:

"*First,* as tending to show a request for the services sued for, and thus negativing any presumption that such services were gratuitous.

"*Second,* as tending to show a joint request by defendants for the performance of the services jointly by all the plaintiffs.

"*Third,* as bearing upon the value of the services actually rendered when compared with those mentioned in the writing."

In this the trial court has concisely and correctly stated sufficient reason for admitting the contract in evidence, and the consideration that might properly be given to it by the jury.

Objection is made by counsel to the admission of

evidence as to services in procuring a man ready, willing and able to purchase the bond issue and to the following instruction in relation thereto:

"I charge you that the railroad and Mr. White had a right to go outside of Mr. Canfield and his associates and procure this money for this $275,000 worth of bonds approximately if they chose, but if before that time Mr. Canfield and his associates had procured such a purchaser themselves who was willing and ready and able to take this issue of bonds in the sum of $275,000 approximately of which Mr. White had notice, that the railroad company and Mr. White would have to pay what their service in procuring that man was, just as if they had accepted it. That is the law. That is common justice."

On the same subject the court further instructed the jury as follows:

"But if up to that time these men at the invitation and request of Mr. White had been negotiating in and about the procuring of such a purchaser, of which fact Mr. White had notice, that then up to that time when they knew that it would be useless to labor longer for them to produce such a purchaser—I mean that White had got the money somewhere else—that they would be entitled to recover what their services were fairly and reasonably worth for the procuring of such a purchaser or the floating of such an issue of bonds, just the same as if Mr. White had been in position to and had accepted that performance."

We have said that the plaintiffs were entitled to recover for their services on the *quantum meruit* under the fourth count of the declaration. Under this theory the testimony was admissible. For the same reason the plaintiffs were entitled to the instruction complained of, which correctly states the law applicable to the facts as claimed by them. We find no material error in the admission of evidence nor in the court's instructions to the jury.

The defendants made a motion for a new trial,

assigning various reasons, one of which was that the verdict was excessive. The work required of the plaintiffs involved much more than the mere matter of floating a bond issue. The road had not been completed. The company was in the hands of a receiver. The earnings were insufficient to pay operating expenses, and altogether it was not an attractive proposition for bond holders. To get the company out of the hands of the receiver, retire its outstanding obligations, complete the construction of the road and provide new equipment for its operation, was a task for men of skill and experience. That the plaintiffs rendered valuable services in this work clearly appears in the record. We are not convinced that the jury allowed them more than their services were reasonably worth.

Plaintiffs concede that the judgment contains an improper allowance of $8,500 for interest. A new trial will be granted unless the plaintiffs file a remittitur for $8,500 within 15 days. On the filing of such remittitur the judgment will be affirmed with costs to the defendants.

FELLOWS, C. J., and WIEST, CLARK BIRD, SHARPE, MOORE, and STEERE, JJ., concurred.