STONELEIGH HOMES, INC., *v.*
JEROME BUILDING COMPANY

1. CORPORATIONS—DEFAULTING CORPORATION—ANNUAL REPORT—CONTRACTS—ENFORCEMENT.

A corporation which does not file its annual report or pay its annual privilege fee, as required by statute, is precluded from enforcing any contract made by it while in default (MCLA § 450.87).

2. CORPORATIONS — DEFAULTING CORPORATION — QUANTUM MERUIT — RIGHT TO RECOVER.

A corporation which did not file its annual report, as required by statute, but later filed its annual report can recover on a quantum meruit basis for services rendered and materials furnished to a defendant during the time when it was not in default (MCLA § 450.87).

Appeal from Calhoun, Ronald M. Ryan, J. Submitted Division 3 October 6, 1970, at Grand Rapids. (Docket No. 8572.) Decided March 23, 1971. Leave to appeal denied June 3, 1971, 385 Mich 753.

Complaint by Stoneleigh Homes, Inc., against Jerome Building Company for damages for breach of contract. Accelerated judgment for defendant. Amended complaint for breach of contract and for the value of labor and materials furnished. Accelerated judgment for defendant. Plaintiff appeals. Reversed and remanded.

*John M. Jereck,* for plaintiff.

*Allen, Worth, Hatch & Calderone,* for defendant.

REFERENCE FOR POINTS IN HEADNOTES
[1, 2] 18 Am Jur 2d, Corporations § 176.

Before: HOLBROOK, P. J., and R. B. BURNS and J. J. KELLEY, JR.,* JJ.

HOLBROOK, P. J. This is an appeal by plaintiff Stoneleigh Homes, Inc., of Battle Creek, Michigan, from grant of motions for accelerated judgment in favor of defendant, Jerome Building Company, of Southfield, Michigan.

Plaintiff brought suit on February 7, 1968, in Calhoun County Circuit Court for breach of contract by defendant arising out of an agreement between the parties dated July 20, 1967, pursuant to which plaintiff, as subcontractor, was to furnish labor, material, equipment, and tools for the undertaking of foundation, masonry, and concrete flat work on and around a building to be constructed by defendant in Battle Creek, Michigan. *In addition* to the original agreement, four *addenda* thereto were executed by the parties, the last of which was dated September 25, 1967.

Plaintiff alleged in its pleadings that it was not allowed to complete its work and plaintiff further alleged, and defendant denied, that, at the time of its dismissal, plaintiff was performing its work in accordance with the agreement and *addenda* thereto. Defendant, in its amended answer filed April 10, 1968, raised as an affirmative defense the following:

"The contract between plaintiff and defendant described in plaintiff's complaint was entered into on July 20, 1967. Plaintiff's annual report to the Michigan Department of Treasury for the year 1967 required by *Section 450.82 of Michigan Compiled Laws of 1948 (MSA 21.82)* and due not later than May 15, 1967, was not filed until August 16, 1967, on which date the filing fee and annual privi-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

lege fee required by law were also submitted to said department. By virtue of its failure to timely file its 1967 annual report and the provisions of *Section 450.87 of Michigan Compiled Laws of 1948 (MSA 21.87)* relating thereto, plaintiff's corporate powers were suspended at the time said contract was entered into between plaintiff and defendant and plaintiff is barred from maintaining this action upon such contract."

In answer to defendant's requests for admissions, plaintiff admitted that it did not file its 1967 annual corporate report nor pay its privilege fee until August 16, 1967.

On September 23, 1968, defendant filed a motion for accelerated judgment for the reason that plaintiff's annual report was not timely filed nor its privilege fee timely paid and that, therefore, the contract in question, dated July 20, 1967, was entered into while plaintiff was in default and while its corporate powers were suspended. MCLA § 450.87 (Stat Ann 1963 Rev § 21.87). The trial court granted defendant's motion for accelerated judgment by a finding entered and filed January 21, 1969, subject to plaintiff's right to file an amended complaint within 20 days from date of judgment for recovery of damages for work and labor performed, setting up defendant's liability to pay such damages, or any waiver or estoppel which would allow recovery against defendant. An order to that effect was entered and filed January 27, 1969.

On February 12, 1969, plaintiff filed an amended complaint alleging in count I thereof in part as follows:

" * * * plaintiff and defendant entered into a series of supplemental agreements, two of which are also dated July 20, 1967, one having no date thereon, and the fourth being dated September 25,

1967, copies of which are attached to plaintiff's original complaint, marked Exhibits 'B', 'C', 'D', and 'E', respectively, and made a part hereof by reference.

"(5) That said last agreement (Exhibit 'E') was entered into on the 25th day of September, 1967; that plaintiff had both filed its annual report and paid its annual privilege fee on August 16, 1967.

"(6) That said Exhibit 'E' provides as follows: 'It is mutually agreed and affirmed that Stoneleigh Homes has agreed that the original agreement with Jerome Building Co. included all fill sand necessary to bring the interior and exterior grades up to the height required for the installation of the concrete flat work, and further in order to resolve this question and the question of monies that are due for additional depth of footings, pads, *etc.,* the Jerome Bldg. Co. agrees to pay Stoneleigh Homes an additional $500 over and above the present contract price, and Jerome Bldg. further agrees that they will advance a sum sufficient to cover the cost of the sand after same has been put in place. The cost of the sand is to be charged against the original contract amount.'

"(7) That said Exhibit 'E' therefore is a ratification and affirmance of the original contract and other supplemental agreements (Exhibits 'A' through 'D'); that therefore the original contract is in existence either by virtue of Exhibit 'E' or by waiver resulting from the execution of Exhibit 'E'."

Plaintiff further alleged, in count I, that, inasmuch as defendant had made payments to plaintiff pursuant to the contract on or about September 19, 20, and 27, 1967, after plaintiff had filed its annual report and paid its privilege fee on August 16, 1967, and had made payments to suppliers and materialmen on behalf of plaintiff, thereby causing plaintiff to rely on the contract and continue to provide labor and materials in accordance therewith, there

was a waiver of the affirmative defense or a ratification of the contract between the parties and that defendant had waived its right to object to plaintiff's complaint for recovery of services rendered and lost profits. In count II of its amended complaint plaintiff alleged in part as follows:

"(2) That plaintiff was engaged by defendant to furnish certain labor and materials on defendant's behalf in the construction of a United States Post Office building in the City of Battle Creek, Michigan.

"(3) That plaintiff, as a result of defendant's request, did provide considerable labor and materials on behalf of said defendant in said construction; that said labor and materials were substantially in accordance with acceptable workmanship and quality.

"(4) That at the time of furnishing said labor and materials said plaintiff expected to receive compensation for the same, and further, said plaintiff believes that defendant expected to pay plaintiff for said labor and materials.

"(5) That while defendant has paid for a portion of the labor and materials furnished by your plaintiff, there still remains a balance due to your plaintiff, the reasonable value thereof being approximately $20,000.

"(6) That defendant has refused, failed, and neglected to pay your plaintiff the said balance due; that if defendant is not ordered to pay said balance, defendant will become unjustly enriched in said amount."

Thereafter, on March 7, 1969, the trial court, considering plaintiff's amended complaint, reaffirmed its grant of accelerated judgment for defendant, while recognizing that it had not yet denied plaintiff recovery, for the value of labor and material furnished, on a quasi-contract theory.

Defendant, on June 4, 1969, again moved for accelerated judgment on plaintiff's amended complaint, again alleging that plaintiff was precluded from maintaining its action by virtue of its delayed filing of its annual report and payment of the required privilege fee, as required by MCLA 1967 Cum Supp § 450.82 (Stat Ann 1967 Cum Supp § 21.82). On November 12, 1969, the trial court again entered its finding granting defendant's motion for accelerated judgment against both counts of plaintiff's amended complaint.

The issues which are dispositive of this appeal are considered in order:

1. *Is a corporation entitled to judicial enforcement of a contract which it made while in default for failure to file its annual report and pay its annual privilege fee required by § 87 of the Michigan general corporation act, MCLA § 450.87 (Stat Ann 1963 Rev § 21.87)?*

Defendant, in its motions for accelerated judgment, relied upon § 87 of the general corporation act, MCLA § 450.87 (Stat Ann 1963 Rev § 21.87), which provides in part:

"(1) If any corporation neglects or refuses to make and file the reports and/or pay any fees required by this act[1] within the time herein specified, and shall continue in default for 10 days thereafter, unless the secretary of state shall for good cause shown extend the time for the filing of such report or the payment of such fee, as the case may be, as provided in section 91 of this act, and (2) if such corporation shall continue in default for 10 days

---

[1] MCLA 1967 Cum Supp § 450.82 (Stat Ann 1967 Cum Supp § 21-.82), provides in part:

"A report accompanied by a filing fee of $2.00 and the amount of the annual privilege fee as provided by law shall be filed with the department of treasury by all profit corporations, * * * . The report shall be filed in duplicate on or before May 15 each year."

after the expiration of such extension, its corporate powers shall be suspended thereafter, until it shall file such report, and it shall not maintain any action or suit in any court of this state upon any contract entered into during the time of such default."

Plaintiff contends that the foregoing statute is intended to prohibit a defaulting corporation from maintaining an action based on contract only so long as the corporation remains in default, inasmuch as the statute provides specifically that corporate powers are to be suspended only "until it shall file such report"; that to permit enforcement by the opposite party of a contract entered during the period of default, as provided in the statute, is inconsistent with an interpretation of the statute which would hold the contract void and never enforceable by the defaulting party; that an interpretation of the statute providing for the forfeiture of contract rights by the defaulting corporation in addition to the payment by it of the other fines and penalties provided by the Michigan General Corporation Act[2] would place a hardship upon the corporation not intended by the enactment in question; and that PA 1933 (Ex Sess), No 11, "An act to provide the terms and conditions upon which the suspension of corporate powers may be waived and said corporations be authorized to do business",[3]

---

[2] PA 1931, No 327, MCLA § 450.1 et seq. (Stat Ann 1963 Rev § 21.1 et seq.), especially MCLA § 450.87 (Stat Ann 1963 Rev § 21.87); MCLA § 450.88 (Stat Ann 1963 Rev § 21.88); and MCLA § 450.91 (Stat Ann 1963 Rev § 21.91).

[3] Section 1 of the act provides:

"All profit corporations whose powers are now suspended under the provisions of section eighty-seven of act number three hundred twenty-seven of the public acts of nineteen hundred thirty-one, as amended, may, upon the filing of such delinquent report and/or the payment of one-fourth of such privilege fee in default, but without penalties, within two months of the effective date of this act, secure from the secretary of state, an extension of time within which to pay the remainder of such fee: Provided, however, That such extension of time shall in no case exceed one year." (Emphasis supplied.)

when read in conjunction with MCLA § 450.87 (Stat Ann 1963 Rev § 21.87), render the contract in question valid and enforceable.

Defendant claims that the provisions of PA 1933 (Ex Sess), No 11, by their express terms, were applicable only to those corporations in default prior to December 26, 1933, the effective date of the act, and which were able to cure such default prior to February 26, 1934. We agree with defendant's contentions as to the inapplicability of PA 1933 (Ex Sess), No 11, to this case.

In *Irvine & Meier* v. *Wienner* (1920), 212 Mich 199, the facts of which are analogous to those in the case under consideration, the Court, in considering § 87 of the general corporation act, stated in part as follows (pp 200, 202):

"The case then which is presented for our consideration is this: Plaintiff was in default for failure to file its 1915 report, when the contract was made on October 14, 1916, but was not in default when the bill was filed to enforce the lien on September 25, 1917. Under these facts was the chancellor right in holding that no relief could be granted the plaintiff?

"1. A solution of the question calls for a construction of the following provision:

" 'If any corporation neglect or refuse to make and file the reports required by this section within the time herein specified, and shall continue in default for ten days thereafter, its corporate powers shall be suspended thereafter, until it shall file such report, and it shall not maintain an action in any court of this state upon any contract entered into during the time of such default.' * * *

"Plaintiff argues that it was not the purpose of the legislature to make such contracts void, but merely to suspend the right of enforcement during the period of default. This view is a plausible one,

but we are not persuaded that the language will permit of that construction. There are several reasons which incline us to the view that the inhibition against enforcement was intended to be perpetual. Some of them are:

"a. The language of the statute taken in its common and ordinary meaning would preclude any recovery thereon.

"b. Because this view is consistent with the first penalty imposed. If plaintiff's power to contract was suspended it is not clear how it could, during the period of suspension, make a contract which would ever have any validity.

"c. It is obvious that the prepositional phrase 'during the time of such default' modifies either the verb 'maintain' or the verb 'entered into'. If it modifies 'maintain' it is clear that the inhibition against enforcement continued only during default, but if it modifies 'entered into' it is equally clear that the inhibition is perpetual. Under the rule that modifying clauses should be placed as near as consistent to the words which they modify, we must conclude that it was intended the phrase should modify the words 'entered into'.

"d. Two penalties are imposed in this section for the failure of a corporation to file its annual report, namely: A suspension of corporate powers and a denial of the right to enforce its contracts. The first named penalty is to continue until the report is filed. If the legislature had intended that the inhibition against enforcement of contracts should be only temporary, may we not assume that it would have added a limitation as it did to the former penalty, by repeating the words 'until it shall file such report', or other words of similar import?

"e. A glance at the former legislation on this subject discloses that the legislation has been steadily, for several years, growing more drastic. The obvious reason for this was to compel prompt filing of annual reports. With the legislature in this

frame of mind when this legislation was passed, it is hardly conceivable that it intended only a temporary suspension of the right to enforce contracts, as that would be but mild punishment for its default. Under this view a corporation could continue to be lax with reference to its annual report, and in the event it desired to sue upon its contract it could then file its report and its atonement would be complete.

"Our conclusion is that the chancellor was right in holding that the contract had no validity and, therefore, no relief could be granted."

In the case of *Adams* v. *E. M. Burke Homes, Inc.* (1968), 14 Mich App 578, 591, it is stated that a contract entered into in circumstances such as those existing in the present case is so far invalid that it may not be affirmatively relied upon by the delinquent corporation.

Upon the basis of the foregoing authority we hold that the trial court was correct in ruling that plaintiff was barred, pursuant to § 87 of the general corporation act, from enforcement of the contract in question.

2. *Where § 87 of the general corporation act, MCLA § 450.87 (Stat Ann 1963 Rev § 21.87), prohibits a plaintiff corporation from maintaining "any action or suit in any court of this state upon any contract entered into during the time of such default", is plaintiff entitled to recover on the theory of quantum meruit for labor and material furnished defendant after the disability of the plaintiff has been removed by a proper filing of the report and payment of the fees?*

Plaintiff claims it is, in any event, entitled to recover for the value of services, materials, and labor performed, after August 16, 1967, when it was not in default on the theory of quantum meruit, as set forth in count II of its amended complaint. We

further determine that § 87 of the general corporation act does not prohibit the recovery on a *quantum meruit* basis by a corporation for the value of its services and materials furnished during a period of time when it is in good standing.

The defendant claims the case of *Lake States Engineering Corporation* v. *Lawrence Seaway Corporation* (1969), 15 Mich App 637, is applicable to the facts herein when considered in conjunction with MCLA § 600.2021 (Stat Ann 1962 Rev § 27A.2021).[4] We disagree because the particular section of the act dealing with foreign corporations provides a permanent bar to the maintenance of actions founded upon forbidden acts, and is distinguishable from § 87 of the general corporation act which suspends the corporation's powers necessarily including its power to enter into contracts only so long as the corporation is in default.

In the case of *Industrial Coordinators, Inc.,* v. *Artco, Inc.* (1962), 366 Mich 313, 317, it is stated in part as follows:

"The powers of a corporation are many—the power to sue and to be sued; the power to deed real estate; the power to carry on a business, et cetera. Furthermore, corporate activity consists of a flow of many acts, some beginning, some ending, and some in process at a given instant. A corporation hires, fires, manufactures, trades, sells, and engages in corporate activities until such time as the suspension is invoked. In this connection, *Turner* v. *Western Hydro-Electric Co.* [1927], 241 Mich 6, is of interest for holding that the failure to pay fees

---

[4] "When, by the laws of this state, any act is forbidden to be done by any corporation, or by any association of individuals, without express authority by law, and such act was done by a foreign corporation, *the foreign corporation shall not maintain any action founded upon such act, or upon any liability or obligation, express or implied, arising out of, or made or entered into in consideration of such act.*" (Emphasis supplied.)

does not cancel the charter even though the statute under consideration in that case declared the charter to be absolutely 'void.' The Court said that such a provision is not self-executing and that a judicial inquiry would be required in order to forfeit the corporate charter.

\* \* \*

*"The suspension here intended is to deny to the corporation the benefit of the use of its powers until the default is cured.* So, a corporation cannot carry on a suit while it is in default if the defense is raised (*Meldman Cartage Co.* v. *Fruehauf Trailer Co.* [1935], 271 Mich 304), but once the default has been corrected, there is no bar to the action. *Eagle Oil Corp.* v. *Cohasset Oil Corp.* [1933], 263 Mich 371." (Emphasis supplied.)

While, as defendant asserts, § 87 of the general corporation act does not retroactively validate contracts made unenforceable during the period of default, we hold that, on the other hand, giving the statute a liberal construction to which it is entitled,[5] that it should not be construed so as to prevent plaintiff herein from recovering on a quantum meruit basis for services rendered and materials furnished to defendant at a time when plaintiff was not in default. *Industrial Coordinators, Inc.,* v. *Artco, Inc., supra.*

The trial judge had difficulty with the problem presented in this case as is evidenced in what he said in his last ruling granting accelerated judgment:

"While it has appeared to this court that a party furnishing valuable materials and labor to another after the annual report was filed and fees paid, should in justice and equity recover the value of such goods and services on a quasi-contract theory,

---

[5] *L. J. Barry Coal Co.* v. *Houghten* (1937), 282 Mich 547.

no decisions in this state have been found to support such an action. There are cases in which relief has been denied, but the quasi-contract theory was not put squarely before the court. In *Detroit United Fruit Auction Co., v. Kroger Grocery and Baking Co.* [1924], 227 Mich 412, plaintiff was denied recovery where 330 boxes of grapefruit were sold and delivered during the default period. Might the decision have been different if the delivery took place after the reports were filed and fees paid?

\* \* \*

"In the absence of cases in point and because the legislature has imposed a strong prohibition against maintaining any action on a contract made while a corporation is in default, this court is constrained to hold that plaintiff corporation may not recover any money on a restitutional theory on an implied contract when it is forbidden to recover on the express contract."

There is no question in this case but that plaintiff corporation had the power to carry on all of its business after qualifying by filing its annual report and fees on August 16, 1967. The cases of *Vanderhoef* v. *Parker Brothers Company, Limited* (1934), 267 Mich 672, and *Orcutt* v. *White* (1922), 220 Mich 590, are applicable to this case as to the period of time when the plaintiff was in good standing and able to transact its business. *Industrial Coordinators, Inc., v. Artco, Inc., supra.*

This Court recognizes the desire of the trial court to come to the same conclusion that we have in this case. We, therefore, reverse and remand for further proceedings consistent with this opinion including the amendment of pleadings if desired or needed. Costs to plaintiff.

All concurred.