## ACCURATE CONSTRUCTION CO., and E. M. Levy, Appellants,

v.

## Bernice WASHINGTON, Appellee.

### No. 9946.

District of Columbia Court of Appeals.

Argued Oct. 14, 1976.

Decided Oct. 14, 1977.

Rex K. Nelson, Washington, D. C., for appellants.

James E. Brammer, Washington, D. C., for appellee.

Before GALLAGHER, YEAGLEY and MACK, Associate Judges.

MACK, Associate Judge:

This is an appeal from the grant of plaintiff's motion for summary judgment in an action for cancellation of a promissory note and deed of trust which were executed pursuant to a contract (*inter alia*) between a woman who was under a court-appointed conservatorship and a corporation whose articles of incorporation had been revoked. We must decide whether the reinstatement of the corporation pursuant to D.C.Code 1973, § 29–938d, ten years after revocation of the charter by proclamation (*id.* § 29–938) for failure to file annual reports, operated retroactively to validate, ab initio, corporate action undertaken after the revocation.

I.

Title to certain improved real property at 334 11th Street in Southeast Washington passed to Bernice Washington under the terms of the will of Isabel Bates, who died on January 30, 1971. Some time later, Ms. Washington learned for the first time (through a title search) that the property was encumbered by a deed of trust. She learned that on September 25, 1964, Isabel Bates had executed a promissory note in favor of "Accurate Construction Company, Inc.," in the amount of $3,423.00, for "labor and materials." The note was secured by a

deed of trust executed on the same date, conveying Ms. Bates' home to Nathan Habib and Richard Sugarman as trustees for Accurate Construction. The note and deed were given to secure payment to Accurate Construction for certain improvements to the home of John and Bertha Jones, relatives of Ms. Bates. The following day, the Joneses and Ms. Bates contracted with Accurate Construction for those improvements, and the contract stated that it was secured by Bates' deed of trust.[1]

At the time these documents were executed—September 25 and 26, 1964—Isabel Bates was under a court-appointed conservatorship, and Accurate Construction's certificate of incorporation had been revoked.

After discovering the encumbrance, appellee brought this action against Nathan Habib and Richard Sugarman, as trustees in the deed of trust; Accurate Construction Company; and E. M. Levy, a director of the then defunct corporation and holder of the note. The complaint sought cancellation of the deed of trust and the note, and execution and recording of a release of the deed of trust by Habib and Sugarman. Defendants Habib and Sugarman, the trustees, stated in answering the complaint that they had no knowledge of any of the facts alleged in the complaint, and would abide by any order of the court. They have not appealed. Levy, the appellant, has actively defended the suit. Accurate Construction was reinstated as a corporation on March 29, 1974, nearly ten years after the revocation of its charter and some ten months after this suit commenced.

Although several other issues were raised,[2] the cross-motions for summary judgment focused principally on the effect of certain facts on the contract, deed and note: *viz.,* that at the time these instruments were executed, Isabel Bates was under a court-appointed conservatorship and the corporate charter had been revoked; and that the corporation was subsequently reinstated.

The trial court ruled that the contract, deed and note executed by Ms. Bates were voidable because she was under a conservatorship, even though no lis pendens had been filed. It also ruled that the documents were void because at the time of their execution Accurate's corporate charter had been revoked; that the transactions were not in the nature of a winding up of the business because the contract with the Joneses significantly enlarged upon an earlier one and included as a party Isabel Bates who had not previously been involved; and that reinstatement did not in this case operate to validate the corporate action.[3] We affirm the trial court's judgment on this second ground, and do not reach the issue concerning lis pendens and the conservatorship.

Accurate Construction Company's articles of incorporation were revoked by proclamation pursuant to D.C.Code 1973, § 29–938(a), which provides:

On the second Monday in September of each year, the Commissioner shall issue a proclamation listing the names of all domestic corporations and all foreign corporations which have failed or refused to pay any annual report fee or fees or failed or refused to file any annual report as required by this chapter for two consecutive years next preceding June 30 in the year in which such proclamation is issued and upon the issuance of such proclamation the articles of incorporation

---

1. John and Bertha Jones also executed a promissory note in the same amount and for the same labor and materials; this was signed on October 10, 1964. Evidently the security of Bates' deed of trust and note was obtained because the Joneses' credit was poor and they already had a trust on their property. The Joneses later defaulted on that first trust and their property was foreclosed on March 13, 1972, at which time a balance of $2,957.18 remained due to Accurate. No effort was ever made to obtain payment from Bates or her estate or to foreclose on her property.

2. As to the other issues on appeal, we have carefully considered each argument and found them to be without merit.

3. The court ordered the defendant Levy to surrender the promissory note and deed of trust in his possession for cancellation.

or the certificate of authority, as the case may be, shall be void and all powers thereunder inoperative without further proceedings of any kind.

We think it clear from the language of this subsection (and the subsection that follows) that the corporation lacked the capacity to contract when it did, and that the legal instruments at issue here were void. Upon the proclamation of revocation, the corporation was shorn of all its powers and rights, save those expressly reserved by the statute for the purpose of winding up its affairs (*i. e.* collecting assets, discharging obligations, and distributing property).[4] At that point the articles of incorporation were "void and all powers thereunder inoperative," (§ 29–938(a)), the corporation was "deemed to have been dissolved" and it was required to "cease to carry on its business." (§ 29–938(c)). Criminal penalties are provided for carrying on business after revocation, as appellants did. (§ 29–938a).

Appellants argue, however, that reinstatement of the corporation operated to validate the prior acts. They rest this argument on Section 29–938d(d) which provides:

Upon the issuance of the certificate of reinstatement, the revocation proceedings theretofore taken as to such corporation by proclamation shall be deemed to be annulled, and such corporation shall have such powers, rights, duties, and obligations as it had at the time of the issuance of the proclamation with the same force and effect as to such corporation as if the proclamation had not been issued.

Appellants urge that because the revocation proceedings were "annulled," in the contemplation of the law, they never occurred; therefore, corporate acts undertaken during the period before reinstatement are valid.

This analysis is not without surface plausibility. However, the effect of reinstatement cannot be ascertained solely by reference to this language read in isolation. Because it is fundamentally at odds with the overall purpose and intent of this statutory scheme, we deem appellants' position unsound.

For as one commentator has noted:

It is generally held that reinstatement of a repealed charter relates back to the date of the proclamation of the repealer and validates corporate action taken in the interim, *unless under the terms of the*

---

**4.** *See* Sections 29–938(c) and (d).

(c) Upon publication of the proclamation of revocation as provided in this chapter each domestic corporation listed in such proclamation shall be deemed to have been dissolved without further legal proceedings and each such corporation shall cease to carry on its business and shall proceed to collect its assets, convey and dispose of such of its properties as are not to be distributed in kind to its shareholders, pay, satisfy, and discharge its liabilities and obligations and do all other acts required to liquidate its business and affairs, and, after paying or adequately providing for the payment of all of its obligations, distribute the remainder of its assets, either in cash or in kind, among its shareholders according to their respective rights and interest.

(d) All domestic corporations the articles of incorporation of which are revoked by proclamation or the term of existence of which expires by limitation set forth in its articles of incorporation shall nevertheless be continued for the term of three years from the date of such revocation or expiration bodies corporate for the purpose of prosecuting and defending suits by or against them, and of

enabling them gradually to collect their assets, convey and dispose of such of their properties as are not to be distributed in kind to their shareholders, pay, satisfy, and discharge their liabilities and obligations and do all other acts required to liquidate their business and affairs, and, after paying or adequately providing for the payment of all its obligations, to distribute the remainder of their assets, either in cash or in kind among their shareholders according to their respective rights and interests, but not for the purpose of continuing the business for which such corporation shall have been organized: *Provided, however,* That with respect to any action, suit, or proceeding begun or commenced by or against a corporation prior to such revocation or expiration and with respect to any action, suit, or proceeding begun or commenced by or against such corporation within three years after the date of such revocation or expiration, such corporation shall only for the purpose of such actions, suits, or proceedings so begun or commenced be continued bodies corporate beyond said three-year period and until any judgments, orders, or decrees therein shall be fully executed. [Emphasis in original.]

*statute the delinquent corporation is, during the period of suspension, wholly without power to act or contract and its attempted acts or contracts are entirely void.*[5] [Emphasis supplied; footnote omitted.]

We think this exception characterizes our statute.

█ The purpose of revocation is obviously to prohibit a corporation from enjoying the privileges of that status when it has failed to perform its resultant responsibilities. Revocation is a disability imposed on a corporation as a penalty. It would deprive the statute of its force and encourage a corporation to default on paying its taxes and fees and filing its annual reports if by subsequent compliance such a corporation could at its convenience completely erase the effects of the penalty.

*Poritzky v. Wachtel,* 176 Misc. 633, 27 N.Y.S.2d 316 (Sup.Ct.1941), cited by the trial court, concerned a reinstatement statute very close to ours. It provided:

'The filing of such certificate shall have the effect of annulling all of the proceedings theretofore taken for the dissolution of such corporation under the provisions of this section and it shall thereupon have such corporate powers, rights, duties and obligations as it had on the date of the publication of the proclamation, with the same force and effect as if such proclamation had not been made or published.' [*Id.* at 634, 27 N.Y.S.2d at 317.]

The plaintiff in that case sought to hold the defendant personally liable for goods which he had ordered on behalf of the corporation knowing that the corporation had been dissolved by proclamation for failure to pay state franchise taxes. Subsequent to the commencement of the suit, the defendant paid the taxes and the corporation was reinstated. The defendant then argued that reinstatement under the above-quoted statute operated retroactively to restore the corporate entity and validated ab initio his acts as president in ordering merchandise for the corporation, with the result that the corporation alone was liable for the debt. (The corporation was without assets.) The court rejected this construction of the statute because it would encourage fraud and abuse, a result which the legislature could not have intended. Reinstatement was held not to have retroactive effect.[6]

█ We conclude that the same result is mandated here. There may, of course, be cases where equitable considerations surface—as, for example, where it would be unreasonable to charge a corporation with responsibility for revocation of its charter, or where a corporation after revocation might be estopped to deny the validity of its undertakings when dealing with parties unaware of the corporate status. But certainly in this case, where the corporation purported to continue business for a period with full knowledge of the revocation, and thereafter made no effort to have its corporate powers restored until this litigation commenced, appellants cannot successfully argue that the reinstatement of corporate identity retroactively validates their unlawful action.

*Affirmed.*

█

5. 16A W. Fletcher, Cyclopedia of the Law of Private Corporations § 7998, at 70–71 (Rev. vol. 1962).

6. *See also Moore v. Rommel,* 233 Ark. 989, 350 S.W.2d 190 (1961); *City Nat'l Bank of Beverly Hills v. Jay Miles, Inc.,* 227 Cal.App.2d 837, 39 Cal.Rptr. 184, 187 (Ct.App.1964); *Stoneleigh Homes, Inc. v. Jerome Building Co.,* 31 Mich. App. 542, 188 N.W.2d 152 (Ct.App.1971); *Clark Estate Co. v. Gentry,* 362 Mo. 80, 240 S.W.2d 124 (1951). *Contra, Frederic G. Krapf & Son, Inc. v. Gorson,* 243 A.2d 713 (Del.1968); *Stutzman Feed Service, Inc. v. Todd & Sargent, Inc.,* 336 F.Supp. 417 (S.D.Iowa 1972).