**COMMUNITY CREDIT UNION SERVICES, INC., et al.,**
Appellants,

v.

**FEDERAL EXPRESS SERVICES CORP., Appellee.**

**AMERICAN FEDERATION OF COMMUNITY CREDIT UNIONS, INC.,**
et al., Appellants,

v.

**FEDERAL EXPRESS SERVICES CORP., Appellee.**

Nos. 86–625, 86–626.

District of Columbia Court of Appeals.

Argued April 22, 1987.

Decided Dec. 2, 1987.

---

Jeffrey C. Tuckfelt, for appellant Community Credit Union Services, Inc.

Ronald E. Abramson, Washington, D.C. for appellant American Federation of Community Credit Unions, Inc.

William A. Grant, with whom Myrrel C. Hendricks, Jr., Washington, D.C. was on brief, for appellee.

Before BELSON and TERRY, Associate Judges, and NEBEKER, Associate Judge, Retired.[1]

BELSON, Associate Judge:

Appellants raise two issues in these consolidated appeals. They argue that appellee Federal Express Services Corporation (FESC) lacks standing to challenge the validity of a deed to property that appellant American Federation of Community Credit Unions, Inc. (AFCCU) previously attempted to transfer to appellant Community Credit Unions Services, Inc. (CCUS), and on which appellee has placed a creditor's lien. Appellants also argue that AFCCU's purported transfer of land to CCUS, whose corporate charter had been revoked, was retroactively validated when CCUS's charter was reinstated. We reject both of these contentions and affirm.

On July 25, 1973, CCUS was organized as a nonprofit corporation in the District of Columbia. CCUS's articles of incorporation were revoked by the Mayor on September 8, 1975, because CCUS had failed to file annual reports and pay all fees due. *See* D.C.Code § 29–587 (1981) (amended 1982). On October 21, 1975, AFCCU attempted to convey by deed to CCUS property located at 2436 Eighteenth Street, N.W., Lot 810, Square 2551, in consideration of the sum of $10.00. CCUS recorded its deed to the property with the District of Columbia Recorder of Deeds in November 1975.

On December 3, 1979, appellee entered into an agency agreement with AFCCU and CCUS. The agreement authorized appellants to act as appellee's agents and to sell appellee's money orders. When AFCCU and CCUS failed to send appellee a percentage of the receipts from the money order sales as required by the agency agreement, appellee filed suit against them to recover unpaid funds of $59,579.84. On June 21, 1982, the suit against AFCCU was resolved by consent judgment. The suit was dismissed as to all other defendants with prejudice. In an effort to satisfy the consent judgment, on or about July 9, 1982, appellee docketed his judgment against AFCCU with the District of Columbia Recorder of Deeds, creating a lien against any real property owned by AFCCU within the District of Columbia. The instant case involves appellee's attempt to enforce its lien against the property located at 2436 Eigh-

---

1. Judge Nebeker was an Associate Judge of this court at the time of argument. His status changed to Associate Judge, Retired, on September 1, 1987.

teenth Street, N.W., which, appellee alleges, AFCCU owns.

On August 6, 1982, FESC filed in the Superior Court of the District of Columbia a creditor's bill requesting sale of the property to satisfy its judgment against AFCCU. On August 10, 1982, CCUS filed the reports and paid the fees it owed to the District of Columbia, and its articles of incorporation were reinstated. CCUS later obtained a certificate from the District of Columbia Recorder of Deeds verifying that the property in question belonged to CCUS, and stating that CCUS had held ownership of that property continuously from November 17, 1975, through May 25, 1983, the date of the certificate.

During the course of the proceedings below, the trial court ruled that CCUS was an indispensable party to the litigation, and CCUS was joined as a party defendant. After a bench trial, the court ruled that the deed to CCUS was invalid since CCUS lacked corporate status at the time of the conveyance. The trial court found that AFCCU was the owner of the property at the time FESC's lien against it was filed, and therefore entered judgment in favor of FESC. The trial court rejected an argument that CCUS's deed was validated retroactively when CCUS's charter was reinstated on August 10, 1982.[2] AFCCU and CCUS appeal from the trial court's judgment against them.

■ Appellants first argue that appellee lacks standing to challenge the validity of AFCCU's purported grant of the Eighteenth Street property to CCUS. Although this court is not governed by standing requirements under article III of the Constitution, we look to federal jurisprudence to define the limits of "[c]ases and controversies" that our enabling statute empowers us to hear. See Lee v. District of Columbia Bd. of Appeals & Review, 423 A.2d 210, 216 n. 13 (D.C.1980); D.C.Code § 11–705(b) (1981). Under Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.,

454 U.S. 464, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982), to meet the minimum requirements of a "case and controversy," a plaintiff must show that it has "'suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant,' ... that the injury 'fairly can be traced to the challenged action[,]' and [that it] 'is likely to be redressed by a favorable decision....'" Id. at 472, 102 S.Ct. at 758 (citations omitted); see Burleson v. United Title & Escrow Co., 484 A.2d 535, 537 (D.C.1983) (per curiam) (plaintiff must show injury in fact resulting from conduct of defendant to have standing to maintain action). Furthermore, under "prudential principles" of standing, a plaintiff may assert only its own legal rights, may not attempt to litigate "generalized grievances," and may assert only interests that "fall within 'the zone of interests to be protected or regulated by the statute or constitutional guarantee in question.'" Valley Forge, supra, 454 U.S. at 474–75, 102 S.Ct. at 759–60.

■ In this action, appellee, in effect, asked the court to examine the state of AFCCU's assets at the time it became AFCCU's creditor. We hold that, as a lien creditor, appellee has standing to challenge a deed that purported to insulate from its lien certain of its debtor's assets. Applying the first prong of the Valley Forge test, we conclude that appellee has suffered a potential injury from its inability to reach the property that AFCCU purported to convey to CCUS. The potential injury may be "fairly ... traced" to the contested transfer of property, and would be redressed by that transfer's invalidation. Under Valley Forge's second prong, there is no question that appellee has asserted its own legal rights as AFCCU's lien creditor, and has not asserted generalized grievances. We also think that protection of a grantor's creditors is, in a general sense, within the "zone of interests" protected by the requirement, discussed infra, that a grantee of land have legal existence. Un-

**2.** The trial court rejected appellee's argument that, because the same two individuals had signed the agreement with appellee in behalf of both AFCCU and CCUS, the two were not separate corporate entities. The issue is not pressed on appeal.

der these tests, therefore, we find appellee's interest sufficient to allow it to question AFCCU's attempt to transfer the Eighteenth Street property to CCUS. *Cf. Hannan v. Hardee,* 63 App.D.C. 76, 77, 69 F.2d 394, 395 (1934) (general creditor of company cannot assail transfer of property by debtor before creditor has obtained court judgment against debtor); FLETCHER CYCLOPEDIA OF THE LAW OF PRIVATE CORPORATIONS §§ 7407, 7416 (H. Schlagman ed. 1981) (creditor may sue to set aside fraudulent conveyance by debtor).

We note that appellee's claim may be distinguished from that of a creditor that attacks a fraudulent conveyance effected prior to the time its debtor incurred the debt. *See Graham v. Railroad Co.,* 102 U.S. (12 Otto) 148, 153, 26 L.Ed. 106 (1880); FLETCHER CYCLOPEDIA OF THE LAW OF PRIVATE CORPORATIONS, *supra* § 7416 at 134. In that situation, the subsequent creditor is deemed to "have given credit to the debtor in the status which [the debtor] had after the conveyance was made," FLETCHER CYCLOPEDIA OF THE LAW OF PRIVATE CORPORATIONS, *supra* § 7416 at 134, and thus to have had actual or constructive notice of the transfer later alleged to be fraudulent. *See Graham, supra,* 102 U.S. at 153. Since CCUS's corporate revocation was a matter of public record, and thus knowledge of its legal nonexistence was equally accessible to appellee as was knowledge of the purported conveyance, appellee may be deemed to have had constructive knowledge that AFCCU's assets *included* the Eighteenth Street property when it extended AFCCU credit because CCUS was incapable of taking title. *See* D.C.Code § 29–587 (1981) (amended 1982).

Appellants also rely on D.C.Code § 29–506 (1981), which is entitled "Defense of ultra vires," to support their argument that appellee lacks standing to challenge the transfer of real property on the grounds that the grantee corporation lacked capacity to accept title. That statute provides that, with certain exceptions, "[n]o act of a corporation and no conveyance or transfer of real or personal property to or by a corporation shall be invalid by reason of the fact that the corporation was

without capacity or power to do such act or to make or receive such conveyance or transfer...." *Id.* Section 29–506 does not apply to the instant case because CCUS was not a "corporation" within the meaning of the statute, either when the land was purportedly deeded to it or when the lien on the property was recorded. Because we are not addressing an *ultra vires* exercise of power, such as § 29–506 governs, that statute does not limit the categories of parties who may assert that a corporation whose charter has been revoked lacked the ability to receive by deed a parcel of real property. In view of the foregoing considerations, we conclude that appellee has standing to challenge the validity of the transfer of the property to CCUS.

■ Turning to the merits of the dispute, we observe first that a deed transferring land to one who has no legal existence does not pass title. *John Davis & Co. v. Cedar Glen # Four, Inc.,* 75 Wash.2d 214, 220, 450 P.2d 166, 170 (1969); *Zulver Realty Co. v. Snyder,* 191 Md. 374, 382, 62 A.2d 276, 279 (1948); *see Allmon v. Gatschet,* 437 S.W.2d 70, 74 (Mo.1969). Under principles of equity, such a deed is valid between the grantor and grantee, but is void when asserted against third parties. *See John Davis, supra,* 75 Wash. at 220, 450 P.2d at 170. A deed conveying property to an incipient "corporation" that has not yet been incorporated passes title to the corporation as of the time of incorporation, *i.e.,* when the corporation becomes a legal entity. *Id.; cf. Zulver Realty, supra,* 191 Md. at 382–83, 62 A.2d at 280 (deed passes title if grantee, although nonexistent at time deed was signed and acknowledged, acquires legal existence by time of delivery).

■ Applying these real property principles to the facts of this case, it is clear that title to the land did not pass to CCUS on October 21, 1975, because CCUS was not in existence as a legal entity at that time. Unless CCUS's title to the land became retroactively effective once its charter was restored, CCUS's title could not have been valid until, at the earliest, August 10, 1982, the date on which its articles of incorpo-

ration were reinstated. Therefore, in the absence of retroactive validation, AFCCU still owned the land at the time FESC perfected its lien against it.

With respect to whether the reinstatement of CCUS's charter operated retroactively to validate the deed *ab initio,* this case is controlled by *Accurate Construction Co. v. Washington,* 378 A.2d 681 (D.C. 1977). In *Accurate Construction,* this court held that a deed of trust, executed after a corporation's charter was revoked because of its failure to file annual reports, was not retroactively validated when the corporate charter was reinstated. *Id.* at 683. The court held that the corporation lacked the capacity to contract after its charter had been revoked pursuant to D.C. Code § 29–937 (1973) (recodified at § 29–399.23 (1981)), and that the legal instruments entered into by the corporation after that revocation were therefore void. 378 A.2d at 684. The court then rejected the argument that the subsequent reinstatement of the corporation, pursuant to D.C.Code § 29–938d (1973) (recodified at § 29–399.28 (1981)), operated to validate the prior acts, finding such an interpretation "fundamentally at odds with the overall purpose and intent of this statutory scheme." 378 A.2d at 684.

On appeal, appellants no longer argue that *Accurate Construction* is in any way distinguishable from the instant case. The trial court rejected their argument that *Accurate Construction* was distinguishable because that case interpreted statutes that apply to for-profit corporations, whereas AFCCU and CCUS are nonprofit corporations. Although it is not identical, the language in the statute governing the reinstatement of charters of for-profit corporations, D.C.Code § 29–938d(d) (1973) (recodified at § 29–399.28 (1981)), is not materially different from the statute governing the reinstatement of charters of nonprofit corporations, D.C.Code § 29–1090(a) (1973) (recodified at § 29–591(a) (1981)). Both statutes provide that reinstatement has the effect of annulling the previous revocation proceedings, and that the corporation shall have the same powers, rights, duties, and obligations as it had at the time of the

revocation with the same force and effect as if the revocation had never occurred. D.C.Code § 29–938d(d), 29–1090(a) (1973) (recodified at § 29–399.28, 29–591(a) (1981)). Thus, the two statutes should be construed similarly, and the holding and reasoning of *Accurate Construction* applies to this case.

Two other cases in this jurisdiction, *National Paralegal Institute v. Bernstein,* 498 A.2d 560 (D.C.1985), and *Truitt v. Miller,* 407 A.2d 1073 (D.C.1979), are distinguishable from this case and from the *Accurate Construction* case in that the corporations (or corporate officers) in *Truitt* and *National Paralegal Institute* were attempting to use the revocation of their charters as a means to avoid liability under contracts entered into while the corporation was technically not in existence. In *Truitt,* we distinguished *Accurate Construction* on the ground that liability of the corporation or its officers was not in question, and described the holding of *Accurate Construction* as "den[ying] the retroactive application of corporate reinstatement in order to close off the corporation's opportunities to *take advantage* of the invalid promissory note." *Truitt, supra,* 407 A.2d at 1081 (emphasis in original). The court then held that because "Truitt held itself out ... as a bona fide corporation ... it should now be estopped from using its own failure to file annual reports as a way to evade responsibility for the obligations it appeared to assume." *Id.*

In *National Paralegal Institute* (NPI), NPI's charter had been revoked prior to the signing of a lease under which it was being sued for unpaid rent. 498 A.2d at 561. The court relied on *Truitt* and found that the reinstatement of NPI's corporate charter applied retroactively since "[t]o hold otherwise would be to allow NPI to use its failure to file annual reports and pay fees as a way of evading the responsibility—the payment of rent—it assumed in signing the lease." *Id.* at 562.

Thus, under the case law of this jurisdiction, CCUS cannot apply to have its previously revoked charter reinstated so as to validate its deed retroactively, thereby in-

sulating the property in question from the lien of a creditor pursuing AFCCU. Unlike *National Paralegal Institute* and *Truitt,* this case does not present a situation in which a corporate reinstatement should be given retroactive effect in order to prevent the revived corporation from taking advantage of its previous revocation by using it to evade responsibility. Thus, this case does not fall within the exception to the general rule of *Accurate Construction* that those two cases recognized. The trial court ruled correctly that *Accurate Construction* is controlling, and that retroactive reinstatement of CCUS would be inconsistent with the purposes behind the revocation and reinstatement statutes.

*Affirmed.*