T.K., INC. et al., Appellants/Cross–Appellees,

v.

NATIONAL COMMUNITY REINVEST-MENT COALITION, INC., Appellees/Cross–Appellants.

Nos. 11–CV–1713, 12–CV–16.

District of Columbia Court of Appeals.

Argued May 21, 2013.
Decided Sept. 26, 2013.

Patrick G. Merkle, Washington, DC, for appellant/cross-appellee.

Roger D. Luchs, with whom Richard W. Luchs and Debra F. Leege, Washington, DC, were on the brief, for appellee/cross-appellant.

Before EASTERLY and McLEESE, Associate Judges, and PRYOR, Senior Judge.

PRYOR, Senior Judge:

These appeals arise from a dispute related to a commercial lease of restaurant space from the predecessor of National Coalition Reinvestment Coalition, Incorporated, (NCRC), lessor, to T.K., Incorporated (T.K., Inc.), lessee. In this action the trial court awarded damages to NCRC on its breach of contract claim and dismissed a counterclaim filed by T.K., Inc.; there are cross-appeals. For the reasons which follow, we reverse the dismissal of T.K., Inc.'s counterclaim and the other judgments and remand for further proceedings consistent with this opinion.

## I. Factual and Procedural Background

### (A)

### Lease Agreement

On August 31, 1993, T.K., Inc. and Jefferson Associates Limited Partnership (Jefferson) entered into a ten-year lease agreement. The terms of the lease agreement permitted T.K., Inc. to lease the lower level of a property located at 727 14th Street, Northwest, from Jefferson for the purpose of operating a restaurant. Tadashi Kaneko, the then-president of T.K., Inc., signed both the lease and a guaranty agreement obligating him to pay all sums owed by T.K., Inc., under the terms of the lease, should T.K., Inc., fail to do so for any reason. An amendment to the lease included an option to renew the lease for an additional ten-year term.

Near the end of the initial lease term, T.K., Inc. elected to exercise its option to renew the lease. On March 4, 2003, T.K., Inc. and 727 15th Street Associates Limited Partnership (Associates), successor in interest to Jefferson, entered into a second amendment to the lease agreement in which the parties agreed to extend the term of the lease for an additional ten years, commencing September 1, 2003, and ending on August 31, 2013.

In early 2004, NCRC purchased the property from Associates. Thereafter, T.K., Inc. made its rent payments to NCRC. NCRC would not learn until later that on September 12, 2005, T.K., Inc.'s articles of incorporation were revoked by the District of Columbia for failure to comply with corporate filing requirements.[1]

1. *See* D.C.Code §§ 29-101.122, -101.123 (2001). We cite herein to the 2001 version of Title 29 of the D.C.Code because this was the ver-

T.K., Inc.'s articles were reinstated on April 9, 2007, after T.K., Inc. satisfied the requirements for reinstatement.[2] Before, during, and after the period when its articles were revoked and reinstated, T.K., Inc. continued to make its rent payments to NCRC pursuant to the terms of the extended lease agreement. In January 2008, T.K., Inc. fell behind in its rent payments.

### (B)

### Landlord and Tenant Action

On May 19, 2008, NCRC filed a complaint for possession of real estate in the Landlord and Tenant Branch of the Superior Court to collect rent unpaid from January 1, 2008, through May 31, 2008. NCRC named Jun Yeong Moon as defendant in the complaint since he was the last person to pay rent and had used checks bearing his name to do so.[3] Moon was personally served with the complaint at the premises. However, Moon failed to appear at a court proceeding on June 18, 2008, and there was a judgment for possession entered in favor of NCRC for failure to pay rent in the sum of $26,138.44. Sometime later, T.K., Inc. paid NCRC $25,000 for rent due through June 1, 2008. However, T.K., Inc. remained behind in its rent payments to NCRC and thus, a writ of restitution was executed on August 11, 2008, in conjunction with the default judgment for possession and T.K., Inc. was evicted from the premises. There was no appeal.

### (C)

### Breach of Contract Action and Counterclaim

On April 1, 2009, NCRC filed a complaint for breach of contract against Moon and against Kaneko, as the guarantor of the lease agreement, for damages arising from the breach of the lease agreement. Kaneko, with the assistance of his counsel, Attorney Patrick Merkle, filed an answer to the complaint. Moon, however, did not respond to the complaint. Thereafter, with respect to Kaneko, the trial court placed the case on the mediation calendar, and with respect to Moon, the court scheduled an ex parte proof hearing.

On September 18, 2009, the court held an ex parte hearing on NCRC's breach of contract claim against Moon. Counsel for NCRC presented proof of the extended lease agreement. Patricia Daws, the property manager, testified that NCRC had found new tenants for the premises and stated that the new tenants were scheduled to commence rent payments on September 12, 2009. Daws testified that NCRC was owed the rent that would have been due up to September 11, 2009. She also testified that there were attorney's fees and expenses for the new tenant's build-out of the premises. The court entered a default judgment against Moon. At the conclusion of the hearing, Attorney Merkle identified himself as the registered agent of T.K., Inc. and raised several questions about the 2008 Landlord and Tenant

sion in effect at all times relevant to this case, *see* D.C.Code §§ 29-101.01 *et seq.* (2001), although we note that the provisions applicable to the instant case were later amended in 2011. *See* D.C.Code §§ 29-106.01 to -106.04 (2011 Repl.).

2. *See* D.C.Code § 29-101.127.

3. As NCRC would later explain, T.K., Inc. was not named a party to the Landlord and Tenant case, and T.K., Inc.'s registered agent, Attorney Patrick Merkle, was never served with the complaint, because NCRC had believed the true name of the tenant to be "TK, Inc." (as it is spelled on the lease agreement), which is not listed in the records of registered organizations at the District of Columbia Regulation Administration Corporations Division; NCRC later learned that T.K., Inc.'s true name is "T[period] K[period], Inc."

action that preceded the instant breach of contract action; he was advised to file an appropriate motion. The default judgment against Moon was entered on the docket and the case remained open as to Kaneko.

On December 4, 2009, NCRC moved, with the consent of Kaneko, to amend its complaint for breach of contract to add T.K., Inc. as a party. The trial court granted NCRC's motion to amend the complaint. T.K., Inc. was added as a party to the complaint. In its amended complaint, NCRC reasserted its claims for damages arising from the breach of the lease agreement. Additionally, NCRC asserted that T.K., Inc.'s interest in the leasehold was terminated following the revocation of its articles of incorporation in 2005, and furthermore, that T.K., Inc.'s leasehold interest was not revived upon the 2007 reinstatement of its articles of incorporation.

Kaneko filed his answer to the amended complaint, denying the allegations in the complaint and asserting affirmative defenses. Subsequently, T.K., Inc. filed an answer and counterclaim. T.K., Inc. primarily asserted that it was wrongfully evicted by NCRC, causing it to incur $500,000 in damages, as it was not made a party to the Landlord and Tenant action and lacked notice of the same.

When NCRC filed a motion to dismiss T.K., Inc.'s counterclaim and T.K., Inc. opposed the motion, the court denied the motion and the case was scheduled for trial. NCRC thereafter filed a motion for summary judgment on the counterclaim, which T.K., Inc. also opposed.[4] The court at first denied NCRC's motion for summary judgment. However, the court later granted a motion for reconsideration filed by NCRC, which was opposed, and the court dismissed the counterclaim. The trial court noted that once T.K., Inc.'s articles were revoked in 2005, it was authorized to commence a law suit based upon the lease only if it did so within two years after the date of revocation.[5] The trial court reasoned that since T.K., Inc.'s interest in the premises ceased in 2007 it no longer possessed any leasehold rights in 2008 when the Landlord and Tenant matter commenced, and thus, T.K., Inc. could no longer sustain a counterclaim for wrongful eviction. Notwithstanding T.K., Inc.'s arguments to the contrary, the court concluded, relying on our decision in *Accurate Construction Co. v. Washington,* 378 A.2d 681 (D.C.1977), that the 2007 reinstatement of T.K., Inc.'s articles did not revive its rights under the extended lease agreement.

The case proceeded to trial on NCRC's breach of contract claim against both T.K., Inc. and Kaneko. After a three-day bench trial, the court entered judgment in favor of NCRC. NCRC filed a motion to amend the judgment to increase its damages award. However, the court declined to increase the damages award, which it set at $112,809.82. The court also awarded $80,001.57 in attorney's fees to NCRC (the fees were unopposed by T.K., Inc., and Kaneko).

The parties in this case present cross-appeals. Appellants T.K., Inc. and Kaneko challenge the trial court's dismissal of T.K., Inc.'s counterclaim for wrongful eviction as well as the adverse award to NCRC on its breach of contract claim. On cross-appeal, NCRC challenges only the damages award, asserting that the trial court erred when it denied NCRC's request to increase the award.

4. While NCRC's motion for summary judgment was pending, the case was transferred to another trial judge.

5. *See* D.C.Code § 29–101.97.

## II. Analysis

### (A)

### T.K., Inc.'s Counterclaim

Because a primary issue in these appeals stems from the interpretation of a statute governing T.K., Inc.'s authority to sustain a counterclaim, we begin by addressing the dismissal of T.K., Inc.'s counterclaim. The gravamen of T.K., Inc. and Kaneko's appeal is their argument that, in dismissing T.K., Inc.'s counterclaim, the trial court erred by concluding that T.K., Inc.'s interest in the leasehold had expired prior to the commencement of the 2008 Landlord and Tenant action, leaving T.K., Inc. unable to sustain its counterclaim for wrongful eviction. We review *de novo* the trial court's decision to dismiss the counterclaim. *See Franco v. Nat'l Capital Revitalization Corp.*, 930 A.2d 160, 166 (D.C. 2007).

At bottom, our decision will depend on our determination of what effect the 2005 revocation and 2007 reinstatement of T.K., Inc.'s articles had on its rights under the extended lease agreement, which it entered into prior to the period of revocation.

Pursuant to D.C.Code § 29–101.122, the Mayor shall void the articles of incorporation and declare inoperative all powers conferred upon any corporation that does not comply with specific statutory requirements or that "fail[s] or refuse[s] to file any 2–year report." Following revocation, the corporation's articles "shall be void and all powers thereunder inoperative"; the corporation is deemed to have been dissolved and it "shall cease to carry on its business" except as otherwise required to wind up its affairs. D.C.Code § 29–101.123(a) and (c).

A corporation that has had its articles of incorporation revoked "may at any time after the date of the issuance of the proclamation of revocation deliver to the Mayor a petition for reinstatement...." D.C.Code § 29–101.127(a). If the Mayor finds that all requirements for reinstatement have been met, it will issue a certificate of reinstatement. § 29–101.127(c). Upon reinstatement, "the revocation ... shall be deemed to be annulled, and such corporation shall have such powers, rights, duties, and obligations as it had at the time of the issuance of the proclamation ... as if the proclamation had not been issued." D.C.Code § 29–101.127(d).

NCRC argues that after T.K., Inc.'s articles were revoked in 2005, its rights under the lease were terminated and devolved to its directors, and further, that the subsequent reinstatement of T.K., Inc.'s articles in 2007 did not restore its rights under the lease. In its brief and its letter to this court submitted pursuant to D.C.App. R. 28(k), NCRC relies on the decision of the Court of Appeals of Maryland in *Messall v. Merlands Club, Inc.*, 244 Md. 18, 222 A.2d 627 (1966), to support its position that T.K., Inc.'s rights in the lease devolved to its directors after the revocation of its articles. In *Merlands Club,* the applicable Maryland statute provided that, upon the forfeiture of a corporation's charter, the assets of the corporation devolved to its directors as trustees, who were responsible for winding up the corporation's affairs. 222 A.2d at 635–36; *see* Md. Code Ann., Corps. & Ass'ns §§ 3–515(a)–(b) (West 1986) ("When the charter of a Maryland corporation has been forfeited, until a court appoints a receiver, the directors of the corporation become the trustees of its assets for purposes of liquidation.... The director-trustees are vested in their capacity as trustees with full title to all the assets of the corporation [for purposes of winding down]"). The District of Columbia statute applicable here, by contrast, expressly states that "[the] *corporation* " shall proceed to do all acts required to liquidate its business. D.C.Code § 29–

101.123(c) (emphasis added).[6] Indeed, D.C.Code § 29–101.123(d) provides that "all corporations that have had their articles of incorporation revoked shall nevertheless continue to exist for the term of 3 years from the date of such revocation" for the purpose of winding up their affairs. This is consistent with the business corporation laws of other jurisdictions. *See, e.g.,* Del.Code Ann. Title 8, § 278 (three years); Kan. Stat. Ann. § 17–6807 (three years). Thus, to the extent that NCRC argues that T.K., Inc. ceased to exist as a corporate entity because its articles were revoked from September 2005 to April 2007 (less than two years), its argument is without merit under our statute.

Nor are we persuaded by NCRC's argument that the 2007 reinstatement of T.K., Inc.'s articles did not fully restore T.K., Inc.'s rights under the lease, a position which NCRC asserts is supported by this court's decisions in *Accurate Construction Co.,* 378 A.2d at 681 and *Brown v. M Street Five, LLC,* 56 A.3d 765 (D.C.2012). NCRC's reliance on *Accurate* and *Brown* is misplaced. In *Accurate,* the corporation entered into a home improvement contract with a third party after its articles had been revoked but before they had been reinstated. 378 A.2d at 682. The trial court ruled that "the contract ... [was] void because at the time of [its] execution [the corporation's] charter had been revoked." *Id.* at 683. We affirmed the trial court's judgment, stating that "[u]pon the proclamation of revocation, the corporation was shorn of all its powers and rights, save those expressly reserved by the statute for the purpose of winding up its affairs." *Id.* at 684 (citing D.C.Code § 29–938(c) and (d) (1973)).[7] We concluded, therefore, that "the corporation lacked the capacity to contract when it did, and that the legal instruments at issue ... were void." *Id.* Similarly, in *Brown,* this court concluded that a foreign corporation, which had its certificate of authority revoked by the District, lacked the authority to subsequently enter into an agreement to extend its lease. 56 A.3d at 773 (citing, *inter alia, Accurate, supra,* 378 A.2d at 685); *see* D.C.Code § 29–101.123(a) and (c).

Hence, we deem *Accurate* and *Brown* distinguishable, as they address the question what effect reinstatement has on a contract entered into by a corporation during a period of revocation. *See Accurate, supra,* 378 A.2d at 683–85; *Brown, supra,* 56 A.3d at 771–73. In contrast, here we determine what effect reinstatement has on a contract entered into *prior* to a period of revocation. Unlike the corporations in *Accurate* and *Brown,* when T.K., Inc. entered into the extended lease agreement, its powers and rights under its articles of incorporation were fully intact. This was true up to the moment when its articles were revoked in 2005 and continued to be the case after its articles were reinstated in 2007, when T.K., Inc. again "had such powers, rights, duties, and obligations as it had at the time of the issuance of the proclamation ... as if the proclamation had not been issued." D.C.Code § 29–101.127(d).[8] Accordingly, we conclude that

6. *See* 16A William Meade Fletcher et al., Fletcher Cyclopedia of the Law of Corporations § 8113, at 236–25 (perm ed., rev. vol. 2012) (although at common law the dissolution of a corporation was treated as equivalent to the death of a natural person, under many modern corporation statutes, a corporation that has had its articles of incorporation revoked "continues its corporate existence" and has authority to collect its assets and do other acts as necessary to wind up and liquidate its business and affairs (footnotes omitted) (citing, *inter alia,* Del.Code Ann. Title 8, § 278)).

7. *See* D.C.Code § 29–101.123(a) and (c).

8. Indeed, as one commentator has noted:

> In most jurisdictions, reinstatement of the corporation relates back to the effective date of the dissolution ..., and the corporation resumes carrying on its business as if administrative dissolution had never oc-

the trial court erred by dismissing T.K., Inc.'s counterclaim for wrongful eviction on the ground that T.K., Inc.'s interest in the leasehold had expired prior to the commencement of the Landlord and Tenant action in 2008.[9]

## (B)

### Remand

Aside from the questions relating to the counterclaim, we observe that, in challenging the award to NCRC on the breach of contract claim, T.K., Inc. and Kaneko raise issues concerning liability, damages, and attorney's fees. On cross-appeal, NCRC asserts that the trial court erred when it denied NCRC's post-trial motion requesting that the court increase the damages awarded for the breach of contract claim. However, we vacate the judgment in favor of NCRC on the breach of contract claim (and thus, need not address the appeal and cross-appeal from the same). When Judge Jackson foreclosed T.K. from presenting a wrongful-eviction defense to the breach-of-contact claim, he did so in reliance on Judge Holeman's earlier ruling dismissing T.K.'s counterclaim because T.K. had lost its corporate status. Because this court

has determined that Judge Holeman's ruling on that point was erroneous, the essential premise of Judge Jackson's ruling has been removed. We therefore vacate the judgment on the breach-of-contract claim and remand for further proceedings. The issues to be explored on remand may include whether there are other grounds (such as claim or issue preclusion) upon which a wrongful-eviction defense could properly be foreclosed, and what the proper measure of damages would be if further proceedings result in a determination that T.K. and Mr. Kaneko are liable for breach of contract.

## III. Conclusion

Accordingly, the order dismissing T.K., Inc.'s counterclaim and the other judgments are reversed and the case is remanded to the trial court for further proceedings consistent with this opinion.

*So ordered.*

---

curred. Thus, the corporation retains title to its property and thereafter may bring or defend lawsuits in its corporate name. It may proceed with the prosecution or defense of a pending lawsuit or may appeal adverse rulings.

FLETCHER, *supra* note 6, § 8112.30, at 224–25 (footnotes omitted).

To the extent that NCRC relies on the Maryland Court of Appeals' decision in *Merlands Club* to argue that reinstatement did not restore T.K., Inc.'s rights in the lease, the *Merlands Club* case is inapplicable. In that case it was both the operation of Maryland law (discussed *supra* ) and the terms of the lease agreement between the tenant corporation and the landlord that operated to invalidate the corporation's attempt to exercise its option to purchase during a period when its charter had been forfeited. No such argument is pressed on appeal by NCRC.

9. We note that, although T.K., Inc.'s articles were again revoked in 2009, its counterclaim was filed within two years of the date of revocation, as permitted by D.C.Code § 29–101.97 (revocation of articles of incorporation "shall not take away or impair any remedy available to ... [the] corporation ... or any right or claim existing ... prior to such dissolution if suit ... thereon is commenced within 2 years after the date of such dissolution"). We further note that, as this action was commenced prior to the 2009 revocation of T.K., Inc.'s articles, T.K., Inc. may continue to defend the suit in its corporate name. *Id.* Thus, to the extent that NCRC argues that T.K., Inc. "never even had the capacity to appear herein and file an Answer and Counterclaim," its argument is without merit.