*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 19-CV-0527

RFB PROPERTIES, LLC, APPELLANT,

v.

FEDERAL NATIONAL MORTGAGE ASSOCIATION, APPELLEE.

Appeal from the Superior Court of the
District of Columbia
(CAR-5383-18)

(Hon. Florence Y. Pan, Trial Judge)

(Argued December 10, 2020                    Decided October 27, 2022)

*Michael E. Brand* for appellant.

*Peter Duhig* for appellee.

Before BLACKBURNE-RIGSBY, *Chief Judge*, and FERREN and THOMPSON,[*] *Senior Judges*.

BLACKBURNE-RIGSBY, *Chief Judge*: Appellant RFB Properties, LLC ("RFB")

challenges the trial court's dismissal of its complaint to quiet title. RFB alleges that

the trial court erred when it determined that appellant lacked standing because its

---

[*] Judge Thompson was an Associate Judge of the court at the time of argument. She began her service as a Senior Judge on February 18, 2022.

corporate status had lapsed at the time it filed its complaint. We agree and reverse, holding that RFB had standing to maintain its action to quiet title after its corporate status was reinstated. RFB's reinstatement related back to the date of its administrative dissolution pursuant to D.C. Code § 29-106.03(d), and, as a result, the actions RFB took during its period of administrative dissolution were validated upon its corporate reinstatement. We therefore remand this case to the trial court to adjudicate the merits of RFB's quiet-title complaint.

## I. Factual and Procedural History

Deborah Tang — a prior owner of condominium unit 233 at 3701 Connecticut Avenue NW, Washington, D.C. ("the property") — executed a note and deed of trust on the property for $214,500 in favor of JP Morgan Chase Bank. JP Morgan assigned its rights to the note and deed of trust to appellee Federal National Mortgage Association ("FNMA"). Ms. Tang passed away shortly after, leaving the property to Marie Canada in her will. Ms. Tang's estate representative executed a quitclaim deed on the property to Ms. Canada, who remained in privity with FNMA, the mortgagee and holder of the deed of trust. After receiving the property, Ms. Canada defaulted on her condominium association fees.

On August 21, 2014, the 3701 Connecticut Avenue Condominium Unit Owner's Association ("Condo Association") recorded a notice of foreclosure sale for assessments due on the property totaling $46,857.59 by Ms. Canada, pursuant to D.C. Code § 42-1903.13 (2012 Repl.), which provided the Condo Association with a super priority lien over other lien holders.[1] *See Chase Plaza Condo. Ass'n v. JP Morgan Chase Bank, N.A.*, 98 A.3d 166, 172 (D.C. 2014) (holding that "a condominium association is permitted to foreclose on [its] six-month [super-priority] lien and [to] distribute the proceeds from the foreclosure sale first to satisfy [its super-priority] lien and then to satisfy any remaining liens in order of lien priority"). Ms. Canada failed to cure by paying the assessment fees due. FNMA, claiming it did not receive notice of the foreclosure sale as the mortgagee, therefore likewise did not cure the defaulted assessment fees.

RFB, a company with an active corporate status at the time, purchased the property for $10,500 at the Condo Association's foreclosure sale, on September 23, 2014. RFB received the deed to the property approximately one month later, on

---

[1] The 2014 condominium foreclosure sale was subject to the version of D.C. Code § 42-1903.13 contained in the 2001 edition of the Code. *See* D.C. Code § 42-1903.13(a)(2) (establishing that a condominium association has a super priority lien).

October 22, 2014, and took possession of the property, but did not, at that time record the deed. Before RFB recorded its deed, its corporate status was administratively revoked on September 10, 2017, due to failure to timely file its two-year annual report.

On December 23, 2016, more than two years after the condominium's foreclosure sale and RFB's acquisition of the property, FNMA filed a complaint in Superior Court against Ms. Canada for judicial foreclosure of the property following her default under FNMA's deed of trust. Ms. Canada failed to respond to the complaint. On September 15, 2017, the trial court entered a default judgment in favor of FNMA and entered a decree of sale authorizing foreclosure on the property.

On November 13, 2017, after learning FNMA had been awarded a default judgment in its judicial foreclosure action, RFB recorded a copy of the deed from its purchase of the property at the 2014 Condo Association foreclosure sale with the Recorder of Deeds. Then two days later, on November 15, 2017, RFB emailed and mailed FNMA a copy of its recorded deed.

FNMA conducted its foreclosure sale on November 16, 2017. During the sale, in an attempt to demonstrate RFB's rightful ownership of the property, a

representative from RFB interrupted the sale to verbally give notice of RFB's title with its recorded deed in hand. Nevertheless, the foreclosure sale proceeded and FNMA purchased the property. The trial court then ratified the sale and approved the accounting of the property's sale.

On July 27, 2018, while still in possession of the property as a lessor, RFB filed the underlying complaint in Superior Court to quiet title to the property,[2] asking the trial court to issue an order concluding that RFB held title to the property and that FNMA's deed from the November 16, 2017, foreclosure was void. FNMA moved to dismiss RFB's complaint, alleging that RFB lacked standing and failed to state a claim for relief. More specifically, FNMA argued that RFB lacked standing to assert a claim to quiet title because it was not a corporate entity in good standing at the time its complaint was filed. FNMA also asserted that RFB neglected to protect its interest in the property against third parties when it failed to timely record the deed after it purchased the property in September 2014.

---

[2] In an affidavit submitted with its opposition to FNMA's motion to dismiss RFB's quiet-title action, RFB asserted that it had various tenants occupying the property through the date of FNMA's judicial foreclosure sale in November of 2017.

In opposing dismissal, RFB noted that it had filed for reinstatement of its corporate status, on September 25, 2018, and that reinstatement took effect the same day. RFB further asserted that FNMA had inquiry notice of other interests in the property based upon RFB's "actual possession of the property" and based upon recordation of the Condo Association's "Notice of Lien" and "Notice of Condominium Foreclosure Sale."[3]

The trial court decided FNMA's motion to dismiss on March 7, 2019, dismissing RFB's complaint to quiet title with prejudice, and ruling that according to case law,[4] RFB lacked standing to sue because it had been administratively dissolved by November 2017, when it became aware of FNMA's foreclosure sale and its quiet-title claim accrued.[5] Relying on *Accurate Construction*, the trial court

---

[3] FNMA does not dispute this recordation information, but disputes that it had inquiry notice of RFB's claim.

[4] *Accurate Construction Co. v. Washington*, 378 A.2d 681, 684 (D.C. 1977).

[5] RFB contended that its quiet-title claim accrued in September 2014, when it purchased the property. The date of accrual should not have been determined at the motion to dismiss stage since the date was in dispute by the parties. *See Brin v. S.E.W. Investors*, 902 A.2d 784, 800-01 (D.C. 2006). Additionally, claim accrual typically has no bearing on a party's standing to sue. Rather, accrual refers to when liability is triggered, primarily for calculating when a statutory limitations period began to run. *Medhin v. Hailu*, 26 A.3d 307, 310 (D.C. 2011).

observed that "where a corporation is administratively revoked, all they can do is wind up their affairs – that's what the statute says – and any causes of action that accrued during the period of revocation may not be brought[,] [e]ven after the corporation is reinstated."[6]

Prior to the hearing on FNMA's motion to dismiss, RFB had moved to file a written sur-reply in opposition to the motion, in which it raised the argument that its reinstatement related back to its date of administrative revocation. However, the trial court precluded RFB from adding this argument, determining that it had not been briefed earlier and was therefore waived because it was being raised at the hearing for the first time.[7]

---

[6] Because *Accurate Construction* preceded a statutory amendment that is applicable to this case, reliance on *Accurate Construction* was misplaced. The trial court reasoned, based on *Accurate Construction*, that there was room to assess "equitable considerations in terms of holding a corporation responsible for deeds that it does during a period of revocation," but concluded that the equities "weigh[ed] very firmly against [RFB], which failed to [timely] record its deed, which is the way it could protect its interests from third parties."

[7] It is unclear from the record if the motion for leave to file the sur-reply was ruled on before the March 7, 2019, hearing. We note that while there is a preference that parties present their motions and arguments in writing, there is some leeway when raising issues at a hearing. *Cf.* Super. Ct. Civ. R. 7(b)(1); 12-I(d) (suggesting that a motion can be presented at a hearing). We are unaware of authority that renders an argument asserted for the first time at a trial court hearing to be waived.

Following the trial court's March 7, 2019, ruling, RFB filed a written motion to alter and amend the judgment, asserting once again that its reinstatement "related back to the effective date of administrative dissolution" pursuant to D.C. Code § 29.106.03(d).[8] The trial court denied the motion, again determining that the argument had been waived, and rejected RFB's relation-back argument because the court read the case law as barring a reinstated corporation from asserting claims against a defendant that arose during the period of retroactive reinstatement unless the defendant "knew or had reason to know of the reinstatement."

This appeal followed.

---

[8] D.C. Code § 29-106.03(d) provides:

> When reinstatement under this section is effective, it shall relate back to, and be effective, as of the effective date of the administrative dissolution, and the domestic filing entity shall resume carrying on its activities and affairs as if the administrative dissolution had never occurred, except for the rights of a person arising out of an act or omission in reliance on the dissolution before the person knew or had reason to know of the reinstatement.

## II.    Discussion

Where a dismissal motion raises a concern regarding a plaintiff's standing to bring suit, it is a challenge to the trial court's subject matter jurisdiction, and is properly assessed as a motion to dismiss under Super. Ct. Civ. R. 12(b)(1). *UMC Dev., LLC v. District of Columbia*, 120 A.3d 37, 43 (D.C. 2015). Subject matter jurisdiction is a question of law, which we must review de novo to determine the question of whether the trial court has subject matter jurisdiction. *Grayson v. AT&T Corp.*, 15 A.3d 219, 228 (D.C. 2011) (quoting *Davis & Assocs. v. Williams*, 892 A.2d 1144, 1148 (D.C. 2006)).

To determine if RFB, a reinstated corporation following administrative dissolution, had the capacity to bring and maintain its action to quiet title, we are tasked with interpreting D.C. Code § 29-106.03(d) (enacted in 2011). Section 29-106.03(d) (hereafter, the "amended statute") replaced the reinstatement provision formerly codified at D.C. Code § 29-398d(d) (1977), which the trial court relied upon without giving effect to the changed language. The amended statute expressly provides that reinstatement of corporate status relates back to the date of administrative dissolution. Subject to an exception (discussed *infra*) that is inapplicable here, "[w]hen reinstatement under this section is effective, it *shall* relate

back to, and be effective, as of the effective date of the administrative dissolution, and the domestic filing entity *shall* resume carrying on its activities and affairs as if the administrative dissolution had never occurred . . . ." D.C. Code § 29-106.03(d) (emphasis added). "Must" and "shall" are verbs whose plain meaning denotes that they are mandatory provisions. *Williams v. United States*, 33 A.3d 358, 360 (D.C. 2011). We conclude, accordingly, that the plain language of the amended statute requires us to recognize RFB's active corporate status retroactive to the date of its administrative dissolution.[9]

Next, we address the more precise question this appeal presents: whether the required relation-back of active corporate status ratified the acts RFB took during its interim period of administrative dissolution. The language in the amended statute requires us to treat a reinstated corporation as though it was always in active status. "[T]he domestic filing entity *shall* resume carrying on its activities and affairs *as if the administrative dissolution had never occurred* . . . ." D.C. Code § 29-106.03(d) (emphasis added). Thus, the language of the amended statute expressly legitimizes,

---

[9] Nothing in legislative history of the amended statute supports a different interpretation. *See* "District of Columbia Code Title 29 (Business Organizations) Enactment Act of 2010," Report on Bill 18-500 before the Committee on Public Services and Consumer Affairs ("Committee Report") at 17 (December 2, 2010); UNIFORM BUSINESS ORGANIZATIONS CODE § 1-603 at 73-75 (NAT'L CONF. OF COMM'RS ON UNIF. STATE L. & AM. BAR ASS'N 2011). Title 29 was modeled on the Uniform Business Organizations Code ("UBOC"). Committee Report at 10.

after reinstatement, the actions a corporate entity, such as RFB, took during an earlier period of administrative dissolution. Generally, where statutes expressly validate interim corporate actions following reinstatement, the "acts taken by the corporation during the period between repeal, forfeiture, or suspension" and the "subsequent reinstatement or revival have been held to be valid." John P. Ludington, Annotation, *Reinstatement of Repealed, Forfeited, Expired, or Suspended Corporate Charter as Validating Interim Acts of Corporation*, 42 A.L.R. 4th 392 §1 (originally published in 1985) (compiling cases where courts have "considered whether the reinstatement of a repealed, forfeited or suspended corporate charter validates actions taken by the corporation during the period its charter was so repealed, forfeited, or suspended"). Both federal and state courts have construed similar statutory language to hold that reinstatement must relate back to the date of dissolution, thus ratifying contracts entered into during the interim period of dissolution.[10] The plain language of the

---

[10] *See, e.g.*, *Chrysler Credit Corp. v Superior Dodge, Inc.*, 538 F.2d 616, 618 (4th Cir. 1976), *cert. denied,* 426 U.S. 1042 (1977) (noting that the effect of a Maryland corporate revival statute was to validate all contracts and acts performed by the corporation when its charter was void, with the same force and effect as if the charter had remained active); *Real Package Liquor, Inc. v. J.R.D., Inc.*, 466 N.E.2d 409, 411 (Ill. App. Ct. 5th Dist.1984) (applying an Illinois statute under which, following reinstatement, "the corporate existence shall be deemed to have continued without interruption from the date of issuance of the certificate of dissolution," and holding that reinstatement of a dissolved corporation must relate back to the date of dissolution); *see also William J. Davis, Inc. v. Tuxedo LLC*, 124 A.3d 612, 617 n.11 (D.C. 2015) (resolving on other grounds but noting the trial court's conclusion that appellee had standing to sue and be sued because its reinstatement pursuant to D.C.

amended statute requires the relation back of RFB's active corporate status to the date of its administrative dissolution. The amended statute also specifies that any corporate "act" taken during the period of the interim dissolution is deemed ratified upon the corporation's reinstatement. D.C. Code § 29-106.03(d).

Here, therefore, RFB's corporate reinstatement on September 25, 2018, related back to its administrative dissolution on September 10, 2017. The effect of reinstatement was to put RFB in the position as if administrative dissolution between September 2017 and September 2018, did not occur. The actions taken by RFB during the interim period were ratified once RFB's corporate status was reinstated. The relation-back and ratification validated RFB's complaint filed on July 27, 2018, giving RFB standing to proceed with its quiet-title action. Reinstatement also ratified the recordation of RFB's deed on November 13, 2017, because it was another act taken during the interim period of dissolution.

---

Code § 29-106.03(d) related back to the date of revocation); *Henderson-Smith & Assocs. v. Nahamani Family Serv. Ctr.*, 752 N.E.2d 33, 39 (Ill. App. Ct. 2001) (citing *Regal Package Liquor v. J.R.D., Inc.*, 466 N.E. 2d 409 (Ill. App. Ct. 5th Dist.1984) (holding that a reinstated corporation could maintain an action even though the contract was entered into and claim accrued while the corporation was administratively dissolved)).

The one exception to relation-back of corporate status provided in the amended statute is inapplicable here. The exception pertains to "the rights of a person arising out of an act or omission in reliance on the dissolution before the person knew or had reason to know of the reinstatement." D.C. Code § 29-106.03(d). This exception explicitly prevents relation back where a party knowingly engages with the dissolved corporation, and it is therefore the party's expectation that liability will fall on the individuals and not on the dissolved corporation after reinstatement. *See Daniels v. Elks Club of Hartford*, 58 A.3d 925, 948 (Vt. 2012) (holding that where a creditor had relied on the defendant's lack of active corporate status when transacting, the defendant's subsequent reinstatement would not limit or shield personal liability). FNMA is not claiming it knowingly engaged in dealings with RFB while RFB was administratively dissolved. FNMA also is not asserting that it relied on RFB's dissolved status when seeking judicial foreclosure. Instead, FNMA has maintained that it was not aware of and did not have inquiry notice of RFB's interest in the property; and therefore, when filing its complaint for foreclosure, did not know that RFB was an administratively dissolved interested party.

Contrary to the foregoing analysis concluding that RFB has standing to pursue its quiet-title claim, FNMA asks us to follow the United States District Court Eastern

District of Virginia's interpretation of D.C. Code § 29-106.03(d), in *United Supreme Council v. United Supreme Council of the Ancient Accepted Scottish Rite for the 33 Degree of Freemasonry*, 329 F. Supp. 3d 283, 290 (E.D. Va. 2018), as the trial court did. The Eastern District adhered to this court's interpretation that "[a] corporation may not take advantage of its revoked status to enjoy a benefit derived from acts taken during a period of revocation." *Id.* (quoting *Accurate Construction*, 378 A.2d at 684). In *Accurate Construction*, however, this court was applying the predecessor statute, D.C. Code § 29-398d(d),[11] which we interpreted to preclude retroactive validity of corporate actions taken prior to reinstatement of the corporate charter. Like the Superior Court, the Eastern District did not examine the differences between the predecessor statute and the revised, compulsory language in the amended statute requiring relation-back. In short, *Accurate Construction*'s holding is not dispositive because it interpreted the repealed predecessor statute, D.C. Code

---

[11] The now repealed D.C. Code § 29-398d(d) (1977) stated:

> Upon the issuance of the certificate of reinstatement, the revocation proceedings theretofore taken as to such corporation by proclamation shall be deemed to be annulled, and such corporation shall have such powers, rights, duties, and obligations as it had at the time of the issuance of the proclamation with the same force and effect as to such corporation as if the proclamation had not been issued.

§ 29-398d(d) (1977), which, unlike the amended statute, D.C. Code § 29-106.03(d), did not expressly require relation back after reinstatement.

We note that in *Accurate Construction*, the absence of language in § 29-398d(d) requiring relation-back allowed this court to contemplate that in some circumstances it might be appropriate to weigh equities in determining whether corporate reinstatement should relate back to the date of administrative dissolution. *Accurate Construction*, 378 A.2d at 685 (stating that equitable considerations could be applicable "where it would be unreasonable to charge a corporation with responsibility for revocation of its charter," or "where a [revoked corporation] might be estopped from denying the validity of its undertakings when dealing with parties unaware of the corporate status"). However, under the amended statute, our ability to consider a range of equities in assessing the applicability of relation-back in corporate reinstatement scenarios is limited by the mandatory language of D.C. Code § 29-106.03, with the one exception previously discussed. Were this court to diverge from the plain language of the amended statute and consider equities not expressly provided for to prevent the application of relation back, the compulsory language of § 29-106.03(d) would be nugatory. *See Gamble v. United States*, 139 S.Ct. 1960, 1982 (2019); *Hicks-Bey v. United States*, 649 A.2d 569, 581 (D.C. 1994) (Sullivan, concurring in part and dissenting in part) ("The role of the judiciary is to interpret

the laws, and in so doing to protect constitutional rights, not to legislate."); *see also*

*1215 CT, LLC v. D.C. Alcoholic Bev. Control Bd.*, 213 A.3d 605, 611 (D.C. 2019)

("[A] court opinion is no longer controlling when it has been superseded by a statute

that codifies an interpretation that the court rejected.").

## III.   Conclusion

In this appeal, arising from a motion to dismiss, the plain language of the

revised statute, D.C. Code § 29-106.03, requires reinstatement of corporate status

retroactively, validating corporate acts that were taken while RFB was

administratively dissolved.  RFB therefore had standing to maintain and proceed

with its action to quiet title after its corporate status was reinstated, because under

the amended statute, reinstatement related back to the date of the administrative

dissolution of its corporate status.  Relation back also applied to RFB's recordation

of its deed, validating its recordation during RFB's interim period of administrative

revocation.  We, therefore, reverse the trial court's grant of dismissal with prejudice

for lack of standing, and remand the case for further proceedings consistent with this

opinion.[12]

---

[12] On remand, the trial court will have the task of determining whether the condominium foreclosure sale and super priority lien extinguished FNMA's lien on the property and the impact, if any, of the delayed recordation of RFB's deed.