Martin F. McMAHON, Appellant,

v.

ANDERSON, HIBEY AND
BLAIR, Appellee.

No. 97–CV–1224.

District of Columbia Court of Appeals.

Submitted Sept. 24, 1998.
Decided April 29, 1999.

Martin F. McMahon, filed a brief pro se.

Herbert R. Rubenstein, Washington, DC, was on the brief for appellee.

Before STEADMAN and RUIZ, Associate Judges, and MACK, Senior Judge.

STEADMAN, Associate Judge:

Martin F. McMahon, Esq., executed a lease to rent office space from appellee Anderson, Hibey & Blair ("AH & B"), a law partnership. In an action for unpaid rent and other charges,[1] the trial court granted summary judgment for AH & B, despite McMahon's defense that the lease was an illegal attempt to circumvent the District of Columbia's zoning laws. We conclude that the circumstances surrounding the making and performance of the lease were in sufficient dispute to withstand the grant of summary judgment.

## I.

We apply the familiar and oft-repeated criteria for review of grants of summary judgment. Our review of summary judgment orders is *de novo*, and we review the record independently using the same substantive standard as the trial court. *See, e.g., Anderson v. Ford Motor Co.*, 682 A.2d 651, 652 (D.C.1996). The movant, here AH & B, must demonstrate that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *See, e.g., Colbert v. Georgetown Univ.*, 641 A.2d 469, 472 (D.C.1994) (en banc); Super Ct. Civ. R. 56(c). The evidence is viewed in the light most favorable to the party opposing the motion, here McMahon. *See Colbert, supra*, 641 A.2d at 472. The facts, so viewed, may be summarized as follows.

On February 27, 1995, AH & B and McMahon entered into a written month-to-month lease agreement to begin March 1, 1995, and covering one office and secretarial area in a building located at 1708 New Hampshire Avenue in Northwest Washington. The occupancy provision of the lease states that the "leased premises shall be occupied by Tenant and/or Tenant's clients, namely, Louis Zadi of United Media & Technology and Ibrahim Metzer of World Trading Co." McMahon was the only tenant signatory to the lease. However, McMahon never occupied the office space; rather, McMahon's two clients, who appear to have worked as international business consultants, used the office space, had phone lines installed for their use, and letterhead printed for the office address.

An initial payment of $2,175, drawn on McMahon's law offices' special escrow account for Louis M. Zadi, was paid to AH & B to cover the March rent, security deposit, and moving expenses. April rent was timely paid by the actual occupants, McMahon's clients. No further rent payments were made, nor was AH & B paid for any charges incurred by the tenants. AH & B looked first to obtain rent and payment for services rendered from the clients who were actually utilizing the office space. When this approach failed, AH & B looked to McMahon to satisfy the rental arrears and service charges. McMahon refused to make the payments. The premises were relinquished to AH & B on July 31, 1995.

In its suit against McMahon to recover $10,757.30 for rent and services provided pursuant to the lease agreement, AH & B moved for summary judgment. In opposition, McMahon argued, inter alia, that the lease was illegal and unenforceable because it was entered by both parties for the purpose of evading District of Columbia zoning laws.[2] By his account of the events leading to the execution of the lease, supported by affidavits, the initiative for this plan came from the administrator of AH & B, Nanette Ackerman. Ackerman told McMahon that the space, being located in a special purpose (SP) district,[3] could only be leased to a profession-

---

1. The lease had been terminated and possession restored to AH & B.

2. He also asserted that his clients who occupied the office were the real parties in interest and that the signatories to the lease never intended that McMahon use the space or be responsible for lease payments and charges. Although conceptually perhaps somewhat distinct, this argument in the circumstances here appears to meld into the illegality issue.

3. Under D.C. Zoning Regulations, office use of buildings in SP districts is limited to use by "an international organization, non-profit organization, labor union, architect, dentist, doctor, engineer, lawyer, or other professional person," if such use is approved as a special exception by the Board of Zoning Adjustment. 11 D.C.M.R.

al like him, a practicing attorney. McMahon informed her that the offices were for his clients, that he already had a law office elsewhere, and that he did not want to burden himself with additional rent. Ackerman interviewed one of McMahon's clients, Mr. Zadi, who was very interested in taking the space. After further discussions about the SP problem, Ackerman then came up with the idea that the lease would technically be with an attorney although the real tenants were going to be the two clients. The lease therefore was executed between AH & B and McMahon, but, as already indicated, the space was occupied by the clients and AH & B dealt with them as the true tenants until the defaults occurred.[4]

 The trial court granted AH & B's motion for summary judgment on the ground that the lease was "clear and unambiguous on its face as to [McMahon's] liability as a tenant." The court found that issues raised by McMahon as being in dispute were not "material" on the ground that they related to the parties' intent and that such intent was immaterial in this case because there was a written contract between the parties that was unambiguous on its face.[5] The court did not specifically address McMahon's argument that the contract was illegal, although McMahon stressed this issue again in his timely

§§ 508.1, 3801 (1995). AH & B does not argue, at least for purposes of this appeal, that the occupancy by McMahon's clients was in fact permissible under the zoning law. In any event, the facts concerning those clients are insufficiently clear for the issue to be determined at this point. See note 9, infra.

4. AH & B sharply contests McMahon's version of events. An affidavit by Ackerman, for example, asserts that "contrary to the assertions in [defendant's] affidavit, I did not advise [defendant] as to how the lease agreement should be structured." McMahon points to such assertions as virtual admissions by AH & B as to the existence of disputed material facts.

5. In its ruling, the trial court relied on cases which stress the importance of respecting written contracts in accordance with their express terms. When it comes to interpreting the terms of an unambiguous written contract, the general rule indeed is that the parties' intent is irrelevant and interpretation of such a contract is a question of law appropriate for summary judgment. See Doggett v. McLachlen Bancshares Corp., 663 A.2d 511, 516 (D.C.1995) (citing Holland v. Han-

motion for reconsideration, which was denied. He raises it again before us.

## II.

 It is a long-standing principle of District of Columbia law that when parties have entered into an illegal contract, such contract is unenforceable and, typically, we leave the parties where we find them.[6] See, e.g., Capital Constr. Co. v. Plaza West Coop. Ass'n, Inc., 604 A.2d 428 (D.C.1992) (home improvement contractor who accepted progress payments when it was not a licensed contractor violated D.C. regulations and could not enforce the contract); Fields v. Hunter, 368 A.2d 1156 (D.C.1977) (liquor store owner not entitled to money owed for goods sold and delivered where agreement was sale of liquor on credit in violation of D.C. statute); Credit Finance Serv., Inc. v. Able, 127 A.2d 396, 398 (D.C.1956) ("unlawful interest charge results in voiding the contract and disentitles the lender to any recovery"); Hartman v. Lubar, 77 U.S.App. D.C. 95, 96, 133 F.2d 44, 45 (1942) ("an illegal contract, made in violation of a statutory prohibition designed for police or regulatory purposes, is void and confers no right upon the wrongdoer"), cert. denied, 319 U.S. 767, 63 S.Ct. 1329, 87 L.Ed. 1716 (1943). See also

nan, 456 A.2d 807, 815 (D.C.1983); other citations omitted). However, the written contract is not absolutely sacrosanct against external evidence. Possible exceptions are summed up in the RESTATEMENT thus:

What appears to be a complete and binding integrated agreement may be a forgery, a joke, a sham, or an agreement without consideration, or it may be voidable for fraud, duress, mistake, or the like, or it may be illegal. Such invalidating causes need not and commonly do not appear on the face of the writing. They are not affected even by a "merger" clause. RESTATEMENT (SECOND) OF CONTRACTS § 214, cmt. c (1981). Parol evidence is admissible to prove such invalidating causes. Id. § 214(d).

6. A long-recognized exception to this rule, not applicable here, is that a party, even though technically in pari delicto, may be permitted to recover on an illegal contract "if the law in question was passed for [that party's] protection and it appears that the purposes of the law will be better effectuated by granting relief than by denying it." Rubin v. Douglas, 59 A.2d 690, 691 (D.C.1948) (citations omitted).

RICHARD A. LORD, WILLISTON ON CONTRACTS § 12:4, at 23–24 (4th ed.1995) (it is an "elementary principle ... that one who has participated in a violation of the law will not be allowed to assert in court any right based upon ... the illegal transaction"); RESTATEMENT OF THE LAW OF CONTRACTS § 598 (1932) (general rule in contract law for the effect of illegality on a contractual arrangement is that the arrangement is unenforceable by either party). With regard to leases in particular, this court has found that leases executed by the landlord with knowledge of existing Housing Code violations are void and unenforceable. *See, e.g., Brown v. Southall Realty Co.*, 237 A.2d 834 (D.C.1968); *Diamond Housing Corp. v. Robinson*, 257 A.2d 492 (D.C.1969).[7]

■■■ Even if a lease appears to be legal on its face, such lease may be held to be unenforceable if it was entered into for an illegal purpose;[8] in particular, if a lease was entered into for a purpose that is illegal under all circumstances (e.g., prostitution), such lease is void and unenforceable by either party thereto against the other. *See* 3 MILTON R. FRIEDMAN, FRIEDMAN ON LEASES § 27.302 (4th ed.1997); 49 AM. JUR. 2D, *supra* note 8, § 39; RESTATEMENT (SECOND) OF PROPERTY (LANDLORD & TENANT) §§ 9.1, 12.4 (1977). "Where the contemplated use is prohibited by zoning regulations, the general rule has been invoked that where a lease is made with the knowledge and intent of both

parties that the premises are to be used for an illegal purpose, the lease is void and unenforceable." Erwin S. Barbre, Jr., "Rights between landlord and tenant as affected by zoning regulations restricting contemplated use of premises," 37 A.L.R.3d 1018 § 3 (1971); *see also id.* (1971 & 1998 Supp.) and cases cited therein, *e.g., Weizman v. Chapin*, 79 N.E.2d 668 (Ohio App.1948) (where there was no chance of changing regulatory circumstances, fact that landlord was aware zoning laws prohibited intended use was complete defense to rent collection on theory that lease was void and unenforceable). In order for this rule to apply to prevent enforcement of a lease by the landlord, it must be shown that the landlord knew of the intended illegal use and took action to sanction or further such illegal use. *See* FRIEDMAN, *supra*, § 27.302, at 1532–33, and cases cited therein; 49 AM. JUR. 2D, *supra*, § 41, and cases cited therein.

The application of the general principle is somewhat more complex here. On its face, the leased property could have been used by McMahon for purposes perfectly consistent with the zoning laws. Unlike many leases, McMahon was not limited to any particular use of the property. Moreover, it might have been theoretically possible to obtain a special exception or variance that would have permitted McMahon's clients to have used the property legally.[9]

7. In *William J. Davis, Inc. v. Slade*, 271 A.2d 412 (D.C.1970), a case in which the lease was void because the landlord rented the premises knowing that substantial housing violations existed, we held that the landlord was entitled to payment for the reasonable value of the premises for the period actually occupied on the theory that, because the lease was void, the person occupying such premises was a tenant at sufferance. We take no position in this appeal on the question whether, assuming the lease itself is found to be unenforceable in accordance with its terms, some relief may nonetheless be available to appellee.

8. Parol evidence is admissible to show contract illegality. *See Consumers Credit Serv., Inc. v. Craig*, 75 A.2d 525, 527 (D.C.1950) (parol evidence may be introduced to show that an agreement, though legal on its face, is in fact illegal) (citing *Houghton v. Burden*, 228 U.S. 161, 169, 33 S.Ct. 491, 57 L.Ed. 780 (1913)); RESTATEMENT (SECOND) OF CONTRACTS, *supra*, § 214(d); 49 AM. JUR. 2D *Landlord and Tenant* § 42 (1995) (parol evi-

dence as to knowledge and intent of parties admissible to attack legality of lease agreement).

9. An "international organization, non-profit organization, labor union, architect, dentist, doctor, engineer, lawyer, or other professional person" may use office space in an SP zone if such use is approved as a special exception by the Board of Zoning Adjustment (BZA). *See* 11 D.C.M.R., *supra* note 3, §§ 508. 1, 3801. International business consultants like McMahon's clients do not appear to fall within the above list of permissible users, although the factual record is not sufficiently developed to permit us to make a definitive determination. *See Colker v. District of Columbia Board of Zoning Adjustment*, 474 A.2d 820 (D.C.1983) (upholding BZA determination that financial consulting services not permitted in an SP zone); *Keefe Co. v. District of Columbia Board of Zoning Adjustment*, 409 A.2d 624 (D.C.1979) (holding that consultants and registered lobbyists were not "similar like professionals" within the definition of the SP zoning

However, in the words of the RESTATEMENT OF PROPERTY:

> If the parties to the lease both intend that the leased property is to be used for a purpose illegal only under some circumstances, but both parties intend that the use will be carried on in an illegal manner, the law of contracts governs the effect of the illegality on the enforcement of the lease.

RESTATEMENT (SECOND) OF PROPERTY (LANDLORD & TENANT), *supra*, § 9.1(2); *accord* 49 AM. JUR. 2D, *supra*, § 39, at 79. The comments to the RESTATEMENT further explain:

> The typical situations ... are business activities that can be carried on in certain areas only if a variance from an existing zoning restriction is obtained. In these cases, the normal inference to be drawn from the making of a lease is that the intended use will be undertaken only if the legal requirements for this use are satisfied (...). *Only if that inference is overcome by evidence that the parties have, in effect, conspired to proceed in intentional violation of the law and to use the leased property in an illegal manner is the rule of subsection (2) applicable.*

RESTATEMENT (SECOND) OF PROPERTY (LANDLORD & TENANT), *supra*, § 9.1(2), cmt. b (emphasis added); *Cf. id.* § 9.1, reporter's note 3, at 308 (if parties intend tenant will make illegal use of the leased property without making an attempt to obtain a necessary permit, license or variance, the lease is one for an illegal purpose and is unenforceable); *Della Corp. v. Diamond*, 58 Del. 465, 210 A.2d 847 (1965) (lease void and unenforceable where parties contemplated tenant would sell liquor in restaurant using license issued to landlord).

> Where an incidental use of the leased property is illegal, and ... the leased property may feasibly be used for the remaining legal purposes, the lease is still enforceable.... *However, if the illegal use is the primary use which the parties intend the tenant will make of the leased property, then the entire agreement is illegal.*

RESTATEMENT (SECOND) OF PROPERTY (LANDLORD & TENANT), *supra*, § 9.1, reporter's note 4, at 308–9 (emphasis added); *see also, e.g., Central States Health & Life Co. of Omaha v. Miracle Hills Ltd. Partnership*, 235 Neb. 592, 456 N.W.2d 474 (1990) (neither landlord nor tenant permitted to recover where commercial lease for a single use prohibited by zoning regulations); *Merren v. Plaza Towers Ltd. Partnership*, 161 Ga.App. 543, 287 S.E.2d 771 (1982) (where lease provided that only use of leased premises would be as attorney's office and such use prohibited by zoning ordinance, tenant could not obtain relief in suit alleging breach of agreement); *Thirty-Five Forty Thirtieth Street Corp. v. Straub Furniture Delivery Co.*, 41 Misc.2d 948, 246 N.Y.S.2d 455 (N.Y.Civ.Ct.1963) (landlord could not recover under lease where primary purpose of lease was commercial and area was zoned residential; court did not decide whether landlord could recover outside lease for use and occupancy of property), *aff'd*, 44 Misc.2d 78, 253 N.Y.S.2d 18 (N.Y.App.Term.1964).

■ In this case, McMahon asserts that he and AH & B conspired to proceed in intentional violation of the zoning laws by intending that the only use of the leased office would be by his clients. As evidence, McMahon's affidavit attests that AH & B's administrator came up with the plan to lease the office to McMahon's clients and to circumvent the zoning regulations by having McMahon, who could legally occupy office space in an SP zone, sign the lease. Also on McMahon's version of the facts, disputed by AH & B, only his clients occupied the office space, only his clients paid rent to AH & B, and AH & B provided support services pursuant to the terms of the lease only to his clients. Given the operative legal principles set forth above, we conclude that the record here contained sufficient genuine issues of material fact to preclude the entry of summary judgment in favor of AH & B under the terms of the lease. The judgment appealed from

---

regulations). In *Keefe Co.*, this court upheld the BZA's ruling that in order to fall within the definition of a "professional" under the SP zoning regulations, a person (1) must be licensed by a state or the District of Columbia; (2) must be bound by a code of professional ethics; and (3) must have professional education. 409 A.2d at 625–26.

must therefore be reversed and the case remanded for further proceedings consistent with this opinion.

*Reversed and remanded.*