*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

## DISTRICT OF COLUMBIA COURT OF APPEALS

No. 13-CV-977

CONSTANTINE CANNON LLP, APPELLANT,

V.

MULLEN MANAGEMENT CO., INC., APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(CAB-3079-08)

(Hon. John Ramsey Johnson, Trial Judge)

(Argued September 23, 2014          Decided September 3, 2015)

*John Jay Range*, for appellant.

*S. Scott Morrison*, with whom *David C. Rohrbach* was on the brief, for appellee.

Before WASHINGTON, *Chief Judge*, BECKWITH, *Associate Judge*, and KING, *Senior Judge*.

BECKWITH, *Associate Judge*:  At the time the events in this case took place, a foreign corporation[1] was required to obtain a certificate of authority from the mayor before transacting business in the District of Columbia.  D.C. Code § 29-

---

[1]  Defined as "a corporation for profit organized under laws other than the laws of the District of Columbia and special acts of Congress."  D.C. Code § 29-101.02 (2) (2001); *see also* D.C. Code § 29-101.02 (14) (2012 Repl.).

101.99 (a) (2001).[2] The mayor could revoke that certificate if, among other things, the corporation failed to pay required fees or file its two-year report. D.C. Code §§ 29-101.115 (a), -101.122 (2001). The question presented in this case is whether a contract entered into by a foreign corporation after its certificate of authority was revoked for those reasons is nevertheless enforceable. We hold that it is, and accordingly affirm.

## I.

Appellee Mullen Management Company, Inc., is a Delaware corporation that owns and leases an office building near McPherson Square in the city's northwest quadrant. Mullen obtained a certificate of authority to transact business in D.C. on December 30, 1996. Appellant Constantine Cannon LLP is a Delaware limited liability partnership whose attorneys practice law in the District. In early 2007, Cannon approached Mullen to inquire about leasing office space in Mullen's building. The parties signed a lease on November 30, 2007, and Cannon began to make improvements to the property as required by the lease. A dispute arose

---

[2] The events in this case took place in 2007 and 2008 while the Business Corporation Act (BCA) was in effect. In 2010, the D.C. Council repealed the BCA and passed the Business Organizations Code. While this opinion refers primarily to the BCA provisions that govern this legal dispute, citations to analogous provisions in the current code are provided when appropriate. For instance, we note that a foreign corporation now must "register" to do business rather than procure a certificate of authority. D.C. Code § 29-105.02 (a) (2012 Repl.).

shortly thereafter regarding the building's air ventilation system, and Cannon directed its general contractor to stop work in February 2008. Cannon refused to pay its contractor, who then recorded a mechanic's lien on the property for nearly two million dollars.

Cannon then learned that Mullen's certificate of authority had been revoked on September 10, 2007, eleven weeks before the lease was signed, after the D.C. Department of Consumer and Regulatory Affairs determined that Mullen "failed and/or refused to file reports and pay all fees due and owing." Cannon sent Mullen a letter on March 6, 2008, contending that the lease was void for that reason. Mullen quickly applied to reinstate its certificate of authority, and the District issued a certificate of reinstatement on March 14, 2008. Mullen then sued Cannon for breach of contract. Cannon filed a counterclaim seeking (1) a declaratory judgment that the lease was void because Mullen's certificate of authority had been revoked prior to signing and (2) damages and an injunction against enforcement of the lease because the lease was induced by fraudulent misrepresentation. On cross-motions for summary judgment, the trial court ruled that Cannon breached the lease and the lease was not void even though Mullen's certificate had been revoked. Cannon amended its counterclaim six months later to add a new theory of fraud. After trial, the court entered judgment as a matter of law in favor of

Mullen on both fraud claims and ordered Cannon to pay damages, attorney's fees, and costs for its breach of contract.

Cannon appeals the denial of its summary judgment motion, contending that the lease was void because Mullen's certificate of authority was revoked before the parties signed the contract.

## II.

"Summary judgment is appropriate only when there are no material facts in issue and when it is clear that the moving party is entitled to judgment as a matter of law." *Jones v. Thompson*, 953 A.2d 1121, 1124 (D.C. 2008) (citation omitted). We review the trial court's grant of summary judgment de novo. *Id.* The trial court ruled that the lease was valid despite the revocation of Mullen's certificate for two independent reasons. We consider each in turn.

## A.

The trial court first ruled that the contract was enforceable under D.C. Code § 29-101.119 (b) (2001), which provides that "[t]he failure of a foreign corporation to obtain a certificate of authority to transact business in the District shall not

impair the validity of a contract or act of such corporation."[3]   To reach this conclusion, the trial court implicitly reasoned that a corporation "fail[s] . . . to obtain a certificate" when it does obtain a certificate but that certificate is subsequently revoked.

Mullen defends the trial court's ruling by citing our opinion in *Brown v. M Street Five, LLC*, 56 A.3d 765 (D.C. 2012), where we declined to enforce a contract entered into by a Maryland corporation because Maryland had revoked the corporation's charter prior to signing.  *Id.* at 771.  In a footnote, the court cited D.C. Code § 29-101.119 (b) (2001) and stated that if the corporation "did exist as a *valid* Maryland corporation" when it signed the lease, the lease would have been enforceable even if D.C. had revoked its certificate of authority.  *Id.* at 770 n.8. We clarified, however, that that was "not the scenario presented to us in this appeal." *Id.*

Although we could resolve this case by following this footnote in *Brown*, we decline to do so for two reasons.  First, the court itself noted the statement was unnecessary to its holding.  *See Alfaro v. United States*, 859 A.2d 149, 154 n.8 (D.C. 2004) (stating that dicta has "no effect as indicating the law of the District").

---

[3] The current version of this provision is D.C. Code § 29-105.02 (c) (2012 Repl.).

Second, the court's statement was premised on a mistaken determination that the District had revoked the corporation's certificate of authority prior to signing the contract, when the District had not. *Brown*, 56 A.3d at 767 (lease signed August 12, 2004; certificate revoked September 13, 2004).[4] *Brown* therefore does not dictate the outcome here.

Challenging the trial court's ruling, Cannon argues that § 29-101.119 (b) (2001) applies only to corporations that are never certified—that is, corporations that completely "fail[] . . . to obtain" a certificate, not those that do obtain a certificate but have it revoked. Mullen, on the other hand, essentially asks us to interpret "failure . . . to obtain a certificate" in subsection 119 (b) to mean "without a certificate." We agree with Cannon's interpretation. The word "obtain" means "to gain or attain possession or disposal of," WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY OF THE ENGLISH LANGUAGE, UNABRIDGED 1559

---

[4] We also decline to follow *T.K., Inc. v. National Community Reinvestment Coalition, Inc.*, 76 A.3d 895 (D.C. 2013), which stated that *Brown* "concluded that a foreign corporation, which had its certificate of authority revoked by the District, lacked the authority to subsequently enter into an agreement to extend its lease." *Id.* at 900. *Brown* actually held, however, that a foreign corporation lacked the power to contract because Maryland had revoked its corporate charter. 56 A.3d at 771. And as noted above, dicta in *Brown* actually suggested that if the corporation was a valid Maryland corporation when it entered the contract, the contract would have been enforceable even if the District had revoked its certificate of authority. *Id.* at 770 n.8.

(2002), not merely to have possession of.[5]  It is true that subsections 119 (a) and (c) discuss corporations that transact business "without a certificate," but both of those subsections also contain language suggesting that they apply only to never-certified corporations:  subsection 119 (a) bars corporations from filing suit in D.C. courts "until such corporation shall have obtained a certificate of authority," and subsection 119 (c) assesses fees on corporations doing business without a certificate that must be paid "before any certificate of authority is issued."  D.C. Code § 29-101.119 (a), (c).[6]  We therefore interpret subsection 119 (b) according to its plain meaning to apply solely to corporations that have never obtained a certificate, and we conclude that D.C. Code § 29-101.119 (b) (2001) does not indicate that the contract here is valid.

**B.**

In the alternative, the trial court ruled that the contract was enforceable pursuant to D.C. Code § 29-101.127 (d) (2001), which provides that "[u]pon the

---

[5]  *See also* D.C. Code § 29-101.06 (a)(4) (2012 Repl.) (distinguishing between corporations that have not "obtained" certificates of registration and those whose certificates were "terminated").

[6]  We also decline to read "failure . . . to obtain a certificate" to include failure to obtain a new certificate after revocation because this interpretation strains the statute's clear text and, more significantly, a corporation does not actually obtain a new certificate of authority after revocation.  It obtains a certificate of reinstatement.  *See* D.C. Code § 29-101.127 (2001).

issuance of the certificate of reinstatement, the revocation proceedings . . . shall be deemed to be annulled, and such corporations shall have such powers . . . as if the proclamation [of revocation] had not been issued."[7]  In other words, the trial court concluded that the contract was void when it was signed but then became valid when Mullen obtained a certificate of reinstatement on March 14, 2008.  This ruling is erroneous for two reasons.  First, this interpretation of § 29-101.127 (d) (2001) contradicts our holding in *Accurate Construction Co.  v. Washington*, 378 A.2d 681 (D.C. 1977), that reinstatement does not validate a contract executed during a period of revocation.  *Id.* at 684-85.  While *Accurate* concerned a domestic corporation rather than a foreign corporation, a point we further discuss *infra*, this distinction has no bearing on our interpretation of § 29-101.127 (2001) because that provision refers to both foreign and domestic corporations.[8]  We are bound by *Accurate*'s holding that reinstatement cannot breathe life into a void contract.

Second, even if the trial court's interpretation of § 29-101.127 (2001) were

---

[7]  The comparable provision under the current code, D.C. Code § 29-106.03 (d) (2012 Repl.), would be irrelevant here because it applies only to domestic corporations.

[8]  *See* D.C. Code § 29-101.127 (a) (2001) ("A corporation, the articles of incorporation [domestic] or certificate of authority [foreign] of which have been revoked by proclamation . . . .").

correct, that provision would not help Mullen here because Cannon renounced the contract before Mullen's certificate of authority was reinstated. As stated above, if reinstatement retroactively validates a contract signed by a revoked corporation, the contract must have been void *up until* the corporation's certificate of authority was reinstated. Accordingly, Cannon must have had the right to renounce the contract while it was still void—otherwise Mullen would have unfettered control over the contract's validity and could validate the contract by reinstating its certificate of authority even years later and even if Cannon had relied on the contract being void. *See* 36 AM. JUR. 2D *Foreign Corporations* § 263 (2015) ("[W]hen the foreign corporation has not complied with the doing business statute, the other party may rescind the contract . . . at least when he or she was not in pari delicto."). Because Cannon renounced the contract prior to Mullen's reinstatement, the contract could not be subsequently validated even if we agreed with the trial court's interpretation of § 29-101.127 (d) (2001).

## III.

Although these provisions of the BCA do not indicate that the contract is valid, Cannon bears the burden of proving that the contract is *invalid* to avoid its enforcement. *Nolan v. Nolan*, 568 A.2d 479, 483 (D.C. 1990). We first address Cannon's argument that the contract is invalid under *Accurate*. The plaintiff in

*Accurate* sought to avoid liability on a promissory note she executed to a D.C. corporation whose articles of incorporation had been revoked by the District. 378 A.2d at 683. Relying on D.C. Code § 29-938 (a) (1973), a predecessor to § 29-101.123 (a) (2001),[9] we held that the contract was void because the corporation lacked the capacity to contract after revocation. 378 A.2d at 684. Although the defendant in *Accurate* was a domestic corporation, Cannon argues that its holding must apply equally to foreign corporations because of D.C. Code § 29-101.100 (2001), which states in relevant part that a foreign corporation "shall be subject to the same duties, restrictions, penalties, and liabilities now or hereafter imposed upon a domestic corporation of like character."[10]

But Cannon omits crucial language from *Accurate* that demonstrates its inapplicability to foreign corporations—what exactly had been revoked from the corporation. The corporation in *Accurate* was domestic, so its *articles of incorporation* were revoked and the corporation was "deemed to have been dissolved" for all purposes except winding up its affairs. 378 A.2d at 684. In

---

[9] This provision states in relevant part that after the mayor issues an annual proclamation listing all the revoked corporations in D.C., "the articles of incorporation or the certificate of authority, as the case may be, shall be void and all powers thereunder inoperative without further proceedings of any kind."

[10] The analogous provision in the current code is narrower in scope. *See* D.C. Code § 29-105.01 (c) (2012 Repl.).

contrast, Mullen had its *certificate of authority* revoked—its articles of incorporation (filed in Delaware) remained valid. This distinction makes all the difference because a corporation's existence—and its concomitant capacity to contract—stems from its articles of incorporation, not its certificate of authority. *See* 18 AM. JUR. 2D *Corporations* § 123 (2015) ("[A] corporation cannot have agents, contract for itself, or be contracted with prior to its incorporation."); D.C. Code § 29-302.03 (2012 Repl.) (noting that "corporate existence shall begin when the articles of incorporation are filed"); *see also Accurate*, 378 A.2d at 684 (holding that D.C. corporation cannot contract after articles of incorporation revoked); *Brown*, 56 A.3d at 771 (holding that Maryland corporation cannot contract after corporate charter revoked); *cf. BDC Capital Props., L.L.C. v. Trinh*, 307 F. Supp. 2d 12, 14-15 (D.D.C. 2004) ("Despite its lack of a certificate of authority from D.C., a foreign corporation remains in existence and can continue to rely on its corporate form."); *A. Tasker, Inc. v. Amsellem*, 315 A.2d 178, 180 (D.C. 1974) ("[The BCA] do[es] not withdraw recognition of corporate existence from a foreign corporation which fails to comply with its provisions."). So while revocation voids the certificate of authority and strips a corporation of "all powers thereunder," D.C. Code § 29-101.123 (a) (2001), capacity to contract is simply not a "power" stemming from a certificate of authority—it stems from the fact of

incorporation.[11]

Cannon's assertion that "[r]evoked foreign corporations and revoked domestic corporations are of like character" is therefore incorrect.[12] The District can and does penalize foreign corporations that transact business in D.C. without a

---

[11] For a similar reason, the contract is not invalid because of provisions in D.C. Code § 29-101.116 (2001) and § 29-101.117 (2001) indicating that a foreign corporation's "authority to do business in the District shall cease" after its certificate of authority is revoked. We interpret "authority" to transact business differently from "capacity" to transact business. *See Museum Boutique Intercontinental, Ltd. v. Picasso*, 886 F. Supp. 1155, 1159 (S.D.N.Y. 1995) (citing BLACK'S LAW DICTIONARY 803, 121 (5th Ed. 1979)) (distinguishing "capacity" and "authority" to sue). Capacity to act speaks to one's ability to act—without capacity to do business, a corporation cannot contract. *Brown*, 56 A.3d at 771.

But without authority to act, a corporation can still act; it is just subject to consequences for its unauthorized actions. This conclusion is consistent with our holding that a revoked foreign corporation can enter into valid contracts—it has *capacity* to contract—but it is subject to statutory penalties for conducting unauthorized business for which it lacks *authority*. D.C. Code §§ 29-101.119 (c), -101.124 (2001).

The analogous version of subsection 116 in the current code is § 29-105.11 (c) (2012 Repl.).

[12] While Cannon correctly notes that a D.C. corporation continues to exist for three years after its articles of incorporation are revoked, *see T.K.*, 76 A.3d at 900, Cannon again disregards crucial language: domestic corporations remain in existence *solely* for the purpose of winding up their affairs as described in D.C. Code § 29-101.123 (c)-(d) (2001). The contracts in both *Accurate* and *Brown* were invalid even though the corporations continued to exist for the purpose of winding up. *Accurate*, 378 A.2d at 684; *Brown*, 56 A.3d at 771.

valid certificate of authority. *See* D.C. Code §§ 29-101.119 (c), -101.124 (2001).[13] But since the BCA does not expressly indicate that a corporation lacks capacity to contract while its certificate is revoked, we have no basis to abrogate the basic legal principle that a corporation's capacity to contract stems from its incorporation. *See District of Columbia Pub. Sch. v. District of Columbia Dep't of Emp't Servs.*, 95 A.3d 1284, 1288 (D.C. 2014) (noting that we will not interpret statutes to abrogate common law unless the words "plainly import"). We therefore conclude that a corporation's capacity to contract is unaffected by revocation of its certificate of authority.

## IV.

Cannon makes two additional arguments in support of its contention that the contract here is void because Mullen's certificate of authority was revoked. First, Cannon notes that D.C. Code § 29-101.124 (2001) imposes civil or criminal penalties for "exercis[ing] or attempt[ing] to exercise any powers . . . under a certificate of authority of a foreign corporation which has been revoked." Cannon therefore argues that the contract is void by "common law rule of long standing" that prohibits enforcement of contracts violating a criminal law. While this court

---

[13] The contemporary versions of these statutes are D.C. Code § 29-105.02 (f) (2012 Repl.) and § 29-101.06 (a)(4) (2012 Repl.).

has recognized this general principle, *see McMahon v. Anderson, Hibey & Blair*, 728 A.2d 656, 658 (D.C. 1999), it has no application here. The contract here was not formed for an illegal purpose—for example, illegal drug sales or prostitution. *Cf. id.* at 659 (invalidating leases that, while legal on their face, were made for an illegal purpose). The BCA's penalty provisions are merely a way for the District to enforce its broader regulatory scheme by punishing corporations for doing business without a license.

While we have held that doing business without the appropriate license voids contracts in some circumstances, we have done so only when the licensing scheme is a "prohibitory regulation enacted to protect the public," especially those aimed at preventing "fraudulent and unscrupulous practices." *Capital Const. Co. v. Plaza W. Coop. Ass'n*, 604 A.2d 428, 430 (D.C. 1992); *Lloyd v. Johnson*, 45 App. D.C. 322, 329-31 (1916) (declining to invalidate contract when licensing rule was to raise revenue, not "to protect the public from fraud," *Banks v. McCosker*, 34 A. 539 (Md. 1896), or for "moral[] and general welfare" reasons); *see also Sturdza v. United Arab Emirates*, 11 A.3d 251, 257 (D.C. 2011) (noting that the common law rule is for consumer protection and applies when the licensing scheme is "designed to protect the public" (quoting *Truitt v. Miller*, 407 A.2d 1073, 1079 (D.C. 1979))). The BCA may indirectly protect consumers by "bring[ing] such corporations under the supervision and the regulation of public officials . . . [so]

that the public may have the same information respecting their background and financial standing[,] character and [] management which is demanded of domestic corporations." *Synanon Found., Inc. v. Bernstein*, 503 A.2d 1254, 1268 (D.C. 1986) (separate statement of Mack, J.) (some alterations in original) (quoting *Hill-Lanham Inc. v. Lightview Dev. Corp.*, 163 F. Supp. 475, 476 (D.D.C. 1957)). But an uncertified foreign corporation still must be legally organized under the laws of another state for its contracts to be valid, *see Brown*, 56 A.3d at 771, so D.C. citizens are assured that any corporation with which they deal—whether it has a certificate of authority or not—has fulfilled the legal requirements of incorporation in its home state. By explicitly affirming the validity of contracts signed before a certificate of authority is obtained, *see* D.C. Code § 29-101.119 (b) (2001), Congress[14] already concluded that the benefits of enforcing pre-certification contracts outweigh concerns about public safety and consumer protection, and the D.C. Council included a similar provision in the Business Organizations Code at § 29-105.02 (2012 Repl.). When a certificate is revoked for a corporation's failure to pay fees and file reports, we do not think that consumer protection concerns justify the "harsh and disproportionate" result of voiding contracts executed by

---

[14] The BCA was initially passed by Congress in 1954, and the text of § 29-101.119 (b) (2001) was unchanged through codification in 1973 and recodification in 1981 and 2001. *See* Pub. L. No. 83-389, § 119, 68 Stat. 179, 227 (1954).

noncompliant corporations.[15] *Sturdza*, 11 A.3d at 258 (quoting *Cevern, Inc. v. Ferbish*, 666 A.2d 17, 20 (D.C. 1995)); *see also Fritts v. Palmer*, 132 U.S. 282, 289-90 (1889) (declining to invalidate real estate purchase by foreign corporation that failed to comply with Colorado's certification laws).

Finally, Cannon argues that the contract is void because of D.C. Code § 29-101.117 (2001), which specifies that revocation does not affect "any right of action upon any contract made by the corporation in the District before such revocation." In Cannon's view, this provision signifies that the legislature "deemed it necessary to explicitly provide that pre-revocation contracts remain valid," which "plainly suggests that post-revocation contracts do not." We disagree. First of all, it is unclear that the provision means what Cannon says it does—another plausible reading is that the provision does not address contract "validity" at all but instead affirms that an aggrieved party can still sue a revoked corporation for any "liability or obligation . . . incurred before the revocation." D.C. Code § 29-101.117

---

[15] We do not address whether a post-revocation contract would be enforceable if the corporation's certificate were revoked for reasons that might implicate significant consumer protection concerns, such as when "the certificate of authority of the corporation was procured through fraud practiced upon the district," "[t]he corporation has continued to exceed or abuse the authority conferred upon it by this chapter," or "[a] misrepresentation has been made of any material matter in any application, report, affidavit or other document submitted by such corporation pursuant to this chapter." D.C. Code § 29-101.115 (a)(1), (2), (9) (2001).

(explaining how to serve "process *against* the [revoked] corporation" (emphasis added)). In any event, we need not construe the statute authoritatively because we decline to infer that the provision's silence regarding post-revocation contracts demonstrates the legislature's intent to invalidate such contracts. *Riggs Nat'l Bank v. District of Columbia*, 581 A.2d 1229, 1255 (D.C. 1990) ("Silence is a treacherous guide to legislative intent.").

## V.

For the reasons set forth in this opinion, we affirm the trial court's judgment that the Cannon-Mullen lease was enforceable notwithstanding that it was signed after Mullen's certificate of authority to do business in the District was revoked for failure to pay fees and file reports.

*So ordered.*